UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

FILED
March 8, 2005

No. 03-4172
CR-02-65-PJM

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

DAVID C. HUGHES

Defendant - Appellant

---------------------
O R D E R
---------------------

Panel rehearing of this case is granted at the direction
of the Court.

Entered for a panel composed of Chief Judge Wilkins,
Judge Traxler, and Judge Gregory.

For the Court,

/s/ Patricia S. Connor
_____
CLERK

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                                    No. 03-4172

DAVID C. HUGHES,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-02-65-PJM)

Argued: October 29, 2004

Decided: January 24, 2005

Before WILKINS, Chief Judge, and TRAXLER and
GREGORY, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded with instructions by
published opinion. Chief Judge Wilkins wrote the opinion, in which
Judge Traxler and Judge Gregory joined.

---

**COUNSEL**

**ARGUED:** William Collins Brennan, Jr., BRENNAN, TRAINOR,
BILLMAN & BENNETT, L.L.P., Upper Marlboro, Maryland, for
Appellant. Stuart A. Berman, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Mary-
land, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States
Attorney, Baltimore, Maryland, for Appellee.

## OPINION

WILKINS, Chief Judge:

David C. Hughes appeals his convictions for five counts of bankruptcy fraud and perjury and his subsequent sentence. We affirm Hughes' convictions. However, in light of *United States v. Booker*, No. 04-104, 2005 WL 50108 (U.S. Jan. 12, 2005),[1] we find plain error in sentencing, exercise our discretion to notice the error, vacate the sentence, and remand to the district court for resentencing consistent with the remedial scheme set forth in Justice Breyer's opinion for the Court in *Booker. See Booker*, Opinion of Justice Breyer for the Court at 16-17.

I.

In an effort to avoid foreclosure on her Virginia townhouse, Hughes' wife, Norma Gerstenfeld, filed for Chapter 11 bankruptcy protection in October 1997. Because Gerstenfeld suffered from a physical disability, Hughes assisted her in nearly every step of the bankruptcy proceedings. The actions giving rise to Hughes' convictions began when Hughes assisted Gerstenfeld in filing schedules with the bankruptcy court, under penalty of perjury, that understated the value of her personal property by several hundred thousand dollars. Then, without permission from the bankruptcy trustee, Hughes arranged with auction houses in Maryland and New York for the appraisal and sale of some of Gerstenfeld's most valuable assets. On two subsequent occasions while under oath before the bankruptcy court, Hughes testified falsely that he had not authorized the sale of Gerstenfeld's property by the auction houses.

Hughes was charged with three counts of bankruptcy fraud, *see* 18 U.S.C.A. § 152 (West 2000), and two counts of perjury, *see* 18 U.S.C.A. § 1623(a) (West 2000). A jury returned guilty verdicts on all five counts. At sentencing, the district court grouped the five counts together pursuant to *United States Sentencing Guidelines Manual* § 3D1.2(c) (2000) and calculated the sentence as follows:

---

[1]Consolidated with *United States v. Fanfan*, No. 04-105 (U.S. Jan. 12, 2005).

| | |
|---|---|
| Base offense level for fraud, § 2F1.1(a): | 6 |
| Enhancement for loss greater than $200,000, § 2F1.1(b)(1)(I): | +8 |
| Enhancement for more than minimal planning, § 2F1.1(b)(2)(A): | +2 |
| Enhancement for commission of offense during bankruptcy proceeding, § 2F1.1(b)(4)(B): | +2 |
| Enhancement for abuse of position of trust, § 3B1.3: | +2 |
| Enhancement for obstruction of justice, § 3C1.1: | +2 |
| Final Offense Level: | 22 |

The enhancements to Hughes' sentence were based upon facts found by the district court, not by the jury.[2] Based on an Offense Level of 22 and a Criminal History Category of I, the court sentenced Hughes to 46 months in prison. Hughes now appeals.

## II.

Hughes first argues that the evidence against him was insufficient to support his convictions on the first three counts in the indictment, namely for making false statements in bankruptcy, *see* 18 U.S.C.A. § 152(3); concealing assets, *see id.* § 152(1); and fraudulently transferring assets, *see id.* § 152(7). "In evaluating the sufficiency of the evidence to support a criminal conviction, we must determine—viewing the evidence and all of the inferences reasonably to be drawn from it in the light most favorable to the Government—whether a reasonable trier of fact could have found the defendant guilty beyond a

---

[2]The only exception to this statement is the enhancement for commission of the offense during a bankruptcy proceeding, *see* § 2F1.1(b)(4)(B). Hughes does not challenge this enhancement on appeal.

reasonable doubt." *United States v. Rahman*, 83 F.3d 89, 93 (4th Cir. 1996).

To be convicted under § 152(1), (3), and (7), a defendant must be proven to have acted "knowingly and fraudulently." 18 U.S.C.A. § 152(1), (3), (7). Hughes contends that the Government failed to prove that he acted fraudulently because it failed to present evidence that he intended to deceive any creditor, trustee, or bankruptcy judge. *See United States v. Sabbeth*, 262 F.3d 207, 217 (2d Cir. 2001) (holding that to sustain convictions under § 152, government must prove defendant acted with "intent to deceive"); *United States v. Gellene*, 182 F.3d 578, 586-87 (7th Cir. 1999) (same). He argues that his disclosure of a trust held for Gerstenfeld's benefit and valued at approximately $5 million removed any motivation he might have had to conceal other personal assets since the disclosure enabled the estate to pay all creditors in full. What Hughes fails to acknowledge is that the Government presented evidence that Gerstenfeld lacked authority to liquidate the trust and instead was at the mercy of the trustee, who had discretion over the trust disbursements. Indeed, it was not clear at the time of the alleged concealment that the reorganization plan would provide for full payment to all creditors. A reasonable jury thus could have concluded that Hughes had ample motive and intent to deceive the creditors and the bankruptcy court. We therefore conclude that the evidence against Hughes was sufficient to support the bankruptcy fraud convictions.

## III.

Next, Hughes argues that the district court violated his Sixth Amendment rights by imposing a sentence exceeding the maximum authorized by the jury findings alone. In light of *Booker*, we conclude that the district court plainly erred in this regard.[3] Accordingly, we vacate the sentence and remand to the district court for resentencing consistent with the remedial scheme set forth in Justice Breyer's opinion for the Court in *Booker*. *See Booker*, Opinion of Justice Breyer for the Court at 16-17.

---

[3]We of course offer no criticism of the district judge, who followed the law and procedure in effect at the time of Hughes' sentencing.

A.

For almost two decades, sentences for federal offenses have been imposed pursuant to the Federal Sentencing Guidelines, a regime drafted and revised by the United States Sentencing Commission at the direction of Congress. *See generally* Sentencing Reform Act of 1984, *codified as amended at* 18 U.S.C.A. § 3551 *et seq.* (West 2000 & Supp. 2004) *and at* 28 U.S.C.A. §§ 991-998 (West 1993 & Supp. 2004). Designed to facilitate uniformity in sentencing by accounting for the offense of conviction, the "real conduct" underlying the offense, and the individual characteristics of each defendant, the guidelines prescribe ranges of sentences that were generally binding on the district courts. *See* 18 U.S.C.A. § 3553(b)(1). After a defendant was convicted, the guidelines required the district court to make a series of factual findings about the characteristics of the defendant and of the offense, calculating the final sentence using the facts found by the jury and the facts found independently by the court prior to sentencing. Only under very limited circumstances were courts permitted to depart from the ranges prescribed by the guidelines. *See id.* (requiring a district court to sentence within the guideline range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines"); *United States v. Fenner*, 147 F.3d 360, 363 (4th Cir. 1998).

In *Booker*, the Supreme Court ruled that the Sixth Amendment is violated when a district court, acting pursuant to the Sentencing Reform Act and the guidelines, imposes a sentence greater than the maximum authorized by the facts found by the jury alone. *See Booker*, Opinion of Justice Stevens for the Court at 20. The Court noted that by virtue of § 3553(b)(1), "[t]he Guidelines as written . . . are not advisory; they are mandatory and binding on all judges" and therefore "have the force and effect of laws." *Id.* at 9. In light of the binding nature of the federal regime, the Court found no distinction of constitutional significance between the guidelines and the state sentencing regime it evaluated and found wanting in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). *See id.* at 11. The Court concluded that enhancing sentences based on facts found by the court alone and not by the jury violated the Sixth Amendment imperative that "[a]ny

fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 20 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Having determined that this feature of the federal sentencing regime was unconstitutional, the Court next decided upon an appropriate remedial scheme that would best effectuate Congress' intent in passing the Sentencing Reform Act in light of the Court's constitutional holding. *See Booker*, Opinion of Justice Breyer for the Court at 2. Rejecting a solution that would have preserved the mandatory nature of the guidelines while grafting upon them a requirement that all facts providing the basis for enhancements be found by a jury, *see id.* at 3, 5-6, the Court ruled that Congress would have preferred a solution that rendered the guidelines advisory and restored discretion to courts to impose sentences within the range prescribed by the statutes of conviction, *see id.* at 22, as long as those sentences are reasonable, *see id.* at 18. The Court therefore severed and excised the provisions of the Sentencing Reform Act that mandated sentencing and appellate review in conformance with the guidelines, *see id.* at 16 (severing and excising 18 U.S.C.A. § 3553(b)(1) and 18 U.S.C.A. § 3742(e)), thereby rendering the guidelines "effectively advisory," *id.* at 2.

In the wake of *Booker*, therefore, the discretion of a sentencing court is no longer bound by the range prescribed by the guidelines. Nevertheless, a sentencing court is still required to "consult [the] Guidelines and take them into account when sentencing," *id.* at 22. Consistent with the remedial scheme set forth in *Booker*, a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence. *See id.* at 16-17. If the court imposes a sentence outside the guideline range, it should explain its reasons for doing so.[4] In light of

---

[4]Even the dissent in *Booker*, uncontradicted by the opinion of the Court, acknowledged the "surviving requirement that the court set forth

the excision of § 3742(e) by the Supreme Court, we will affirm the sentence imposed as long as it is within the statutorily prescribed range, *see Apprendi*, 530 U.S. at 490, and is reasonable, *see Booker*, Opinion of Justice Breyer for the Court at 18.

The *Booker* Court concluded that this remedial scheme should apply not only to those defendants, like Booker, whose sentences had been imposed in violation of the Sixth Amendment, but also to those defendants, like Fanfan, who had been sentenced under the mandatory regime without suffering a constitutional violation. *See id.* at 25 (stating that Fanfan's sentence did not violate the Sixth Amendment but noting that "the Government (and the defendant should he so choose) may seek resentencing under the system set forth in today's opinions"); *id.* ("[W]e must apply today's holdings—both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act—to all cases on direct review.").

## B.

Hughes' sentence exceeded the maximum sentence then authorized by the facts found by the jury alone, in violation of *Booker*. However, Hughes raised this issue for the first time on appeal. Because this issue was not advanced in the district court, we review the district court decision for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). Notwithstanding the heavy burden that a defendant faces when alleging plain error in sentencing, we conclude that the district court plainly erred in imposing a sentence on Hughes that exceeded the maximum allowed based on the facts found by the jury alone.

---

'the specific reason for the imposition of a sentence different from that described' in the Guidelines." *Booker*, Dissenting Opinion of Justice Scalia at 3 (quoting 18 U.S.C.A. § 3553(c)(2)). This requirement, from § 3553(c)(2), was not excised by *Booker*, and it continues to govern sentencing courts.

### 1.

"In reviewing for plain error, our initial inquiry is whether an error occurred." *United States v. Hastings*, 134 F.3d 235, 239 (4th Cir. 1998). In *Booker*, the Court ruled that a sentence exceeding the maximum allowed based only on the facts found by the jury violates the Sixth Amendment. *See Booker*, Opinion of Justice Stevens for the Court at 20. Here, under the mandatory guideline regime in existence at the time of sentencing, that maximum would have been calculated according to an Offense Level of 10 (corresponding to a prescribed range of 6 to 12 months' imprisonment), which is the maximum authorized by the facts found by the jury.[5] The imposition of a 46-month sentence, in part based on facts found by the judge, therefore constituted error.

### 2.

"Next, the error must be plain." *Hastings*, 134 F.3d at 239. For purposes of plain-error review, "'[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.'" *Olano*, 507 U.S. at 734. An error is plain "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal." *Johnson v. United States*, 520 U.S. 461, 468 (1997); *accord United States v. David*, 83 F.3d 638, 645 (4th Cir. 1996) (holding that an error is plain when "an objection at trial would have been indefensible because of existing law, but a supervening decision prior to appeal reverses that well-settled law"). When Hughes was sentenced, any claim that imposition of a sentence greater than the maximum authorized under the guidelines by the facts found by the jury alone would violate the Sixth Amendment was foreclosed by circuit precedent. *See United States v. Kinter*, 235 F.3d 192, 199-202 (2000). *Booker* has now abrogated our previously settled law. The error committed by the district court in sentencing Hughes was therefore plain.

---

[5]Hughes conceded that the jury-found facts authorized the enhancement under U.S.S.G. § 2F1.1(b)(4)(B). That provision requires a two-level increase or a minimum Offense Level of 10.

3.

"Third, [Hughes] must establish that the error affected his substantial rights, *i.e.*, that it was prejudicial." *Hastings*, 134 F.3d at 240. To demonstrate that the error was prejudicial, Hughes must show that "the error actually affected the outcome of the proceedings." *Id.* Here, the error alleged by Hughes was that the district court imposed a sentence greater than the maximum authorized by the facts found by the jury alone. Had the district court imposed a sentence within that maximum, Hughes' sentence would have been calculated according to an Offense Level of 10 (corresponding to a prescribed range of 6 to 12 months' imprisonment)—markedly lower than the final Offense Level of 22 (corresponding to a prescribed range of 41 to 51 months' imprisonment) used by the district court.[6] We therefore conclude that the error affected Hughes' substantial rights. *Accord United States v. Promise*, 255 F.3d 150, 160 (4th Cir. 2001) (en banc) (holding that *Apprendi* error resulting in increased sentence affected defendant's substantial rights).

4.

Finally, it remains within our discretion to determine whether the district court error warrants reversal. "Our discretion is appropriately exercised only when failure to do so would result in a miscarriage of justice, such as when the defendant is actually innocent or the error seriously affects the fairness, integrity or public reputation of judicial

---

[6]The question for purposes of determining whether Hughes was prejudiced is not what the district court would have done had it imposed a sentence in the exercise of its discretion pursuant to § 3553(a). Hughes does not argue that the district court erred by failing to regard the guidelines as advisory in sentencing him. Rather, Hughes argues that the district court erred by imposing a sentence that was greater than the maximum authorized by the facts found by the jury alone. Therefore, the prejudice inquiry concerns what sentence the court would have imposed had it not committed the error of going beyond the facts found by the jury in imposing a sentence under the mandatory guideline regime then in existence. This case does not present the question of whether a defendant suffers prejudice because a sentencing court fails to treat the guidelines as advisory in determining the sentence.

proceedings." *Hastings*, 134 F.3d at 244 (alteration & internal quotation marks omitted). We have no difficulty concluding that an exercise of our discretion is warranted here.

*Booker* wrought a major change in how federal sentencing is to be conducted. As the law now stands, sentencing courts are no longer bound by the ranges prescribed by the guidelines. As long as a sentence falls within the statutorily prescribed range, the sentence is now reviewable only for reasonableness. Under the record before us,[7] to leave standing this sentence imposed under the mandatory guideline regime, we have no doubt, is to place in jeopardy "the fairness, integrity or public reputation of judicial proceedings." *Hastings*, 134 F.3d at 244 (internal quotation marks omitted). We therefore exercise our discretion to correct this plain error.[8]

---

[7]The record does not provide any indication of what sentence the district court would have imposed had it exercised its discretion under § 3553(a), treating the guidelines as merely advisory. *Cf. United States v. Hammoud*, 381 F.3d 316, 354 (4th Cir. 2004) (en banc) (recommending "that district courts within the Fourth Circuit announce, at the time of imposing a guidelines sentence, a sentence pursuant to 18 U.S.C.A. § 3553(a), treating the guidelines as advisory only"). We are not called upon today to decide whether we would notice the error had the district court indicated that it would have imposed the same sentence in the exercise of its discretion.

[8]In determining whether the exercise of our discretion is warranted, it is not enough for us to say that the sentence imposed by the district court is reasonable irrespective of the error. The fact remains that a sentence has yet to be imposed under a regime in which the guidelines are treated as advisory. To leave standing this sentence simply because it may happen to fall within the range of reasonableness unquestionably impugns the fairness, integrity, or public reputation of judicial proceedings. Indeed, the determination of reasonableness depends not only on an evaluation of the actual sentence imposed but also the method employed in determining it.

Moreover, declining to notice the error on the basis that the sentence actually imposed is reasonable would be tantamount to performing the sentencing function ourselves. This is so because the district court was never called upon to impose a sentence in the exercise of its discretion. That the particular sentence imposed here might be reasonable is not to say that the district court, now vested with broader sentencing discretion,

IV.

As noted in Part III.A., the first step for sentencing courts is to determine the range prescribed by the guidelines after making such findings of fact as are necessary. Here, the district court has already determined that the guideline range for Hughes' convictions is 41 to 51 months (based on an Offense Level of 22 and a Criminal History Category of I). Hughes challenges this calculation on a number of grounds. Because the district court must consider the correct guideline range before imposing a sentence on remand, the same calculation issues already raised by Hughes are likely to arise again. We therefore take this opportunity to address them.[9]

A.

Hughes first argues that the district court erred by applying an eight-level increase to his offense level to account for an intended loss of $343,696. *See* U.S.S.G. § 2F1.1(b)(1)(I) (calling for an eight-level enhancement for losses between $200,000 and $350,000). Hughes argues that this enhancement was improper because there was no actual loss to the creditors. He correctly notes that under the reorganization plan, all of the creditors were to be paid in full. He also asserts that his intention in transferring Gerstenfeld's personal property to the auction houses—without permission of the bankruptcy trustee—"was to sell it to raise money to *pay the creditors sooner—not to harm them*." Br. of Appellant at 26.

We review de novo the district court interpretation of what constitutes "loss" under § 2F1.1 of the guidelines. *See United States v. Miller*, 316 F.3d 495, 498 (4th Cir. 2003). Once the correct interpretation

---

could not have imposed a different sentence that might also have been reasonable. We simply do not know how the district court would have sentenced Hughes had it been operating under the regime established by *Booker*.

[9]While we address Hughes' challenges here, we do not hold that in every case involving a *Booker* issue, this court must first address alleged calculation errors before vacating and remanding for resentencing in light of *Booker*.

is established, we accept the district court calculation of loss absent clear error. *See id.* at 503.

"Loss under § 2F1.1(b)(1) is the actual, probable, or *intended loss* to the victims." *United States v. Parsons*, 109 F.3d 1002, 1004 (4th Cir. 1997) (emphasis added) (internal quotation marks & alteration omitted). The intended loss "will be used if it is greater than the actual loss," U.S.S.G. § 2F1.1, comment. (n.8), "even if this exceeds the amount of loss actually possible, or likely to occur, as a result of the defendant's conduct," *Miller*, 316 F.3d at 502. Thus, in determining the amount of loss in a bankruptcy fraud case, courts may look to "the amount of loss [the defendant] intended to cause by concealing assets," rather than "the amount of loss creditors actually suffered." *United States v. Walker*, 29 F.3d 908, 913 n.4 (4th Cir. 1994).

The district court observed that at the time of the concealment it was far from clear that there would be sufficient assets to pay the creditors in full. This, to the district court, implied that Hughes "wished to preserve [the concealed] assets and not have them taken potentially in litigation or, if need be, sold and the assets used for personal reasons and not made available." J.A. 323-24. On that basis, the district court calculated the amount of intended loss as the value of the assets concealed by Hughes—$343,696. We find no error in this conclusion and affirm the determination of the district court on this issue.

## B.

Next, Hughes asserts that the district court erred in applying a two-level enhancement for "more than minimal planning." U.S.S.G. § 2F1.1(b)(2)(A). "[M]ore than minimal planning" is defined in part as "more planning than is typical for commission of the offense in a simple form." § 2F1.1, comment. (n.2) (incorporating by reference § 1B1.1, comment. (n.1(f))).

The district court found that Hughes' conduct in concealing his wife's assets met this standard based on the following: "[H]e engaged an appraiser. He arranged for auction houses. He actually transferred the assets, some of them at least himself, attended the auctions . . . . [H]e was clearly involved in trying to get these assets sold and get

proceeds, again, all the time, not disclosing." J.A. 330. Hughes argues that his conduct involved nothing more than moving the assets from his home to the auction house and having them appraised: "There was a simple transfer—there was a simple appraisal," he asserts. Br. of Appellant at 29.

We review the district court conclusion that Hughes' offense involved more than minimal planning for clear error. *See United States v. Pearce*, 65 F.3d 22, 26 (4th Cir. 1995). Given the multiple steps taken by Hughes to have Gerstenfeld's assets transferred to the auction houses and appraised, we conclude that the district court did not clearly err in applying the enhancement for more than minimal planning.

## C.

Finally, Hughes argues that the district court erred in applying a two-level enhancement for obstruction of justice. We find no merit to any of Hughes' arguments on this issue.

## 1.

Hughes first contends that the enhancement to his bankruptcy fraud offense level constituted impermissible double-counting because his false statements before the bankruptcy court were part and parcel of his bankruptcy fraud offenses. As noted above, Hughes was convicted of three counts of bankruptcy fraud and two counts of perjury. Rather than imposing separate sentences for the bankruptcy fraud and perjury offenses, the district court grouped the offenses together, *see* U.S.S.G. § 3D1.2, imposed one sentence for the bankruptcy fraud offenses, and accounted for the perjury offenses by applying a two-level enhancement to the bankruptcy fraud offense level. No independent sentence was imposed for the perjury convictions. *See id.* § 3C1.1, comment. (n.8).[10]

---

[10]In relevant part, § 3C1.1, comment. (n.8) provides:

  If the defendant is convicted both of an obstruction offense . . . and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction

An enhancement for obstruction of justice constitutes impermissible double-counting only when the conduct giving rise to the enhancement is identical to the conduct giving rise to the underlying conviction. *Compare United States v. Clark*, 316 F.3d 210, 213 (3d Cir. 2003) (rejecting enhancement when the obstruction—providing a forged birth certificate to authorities—was identical to the offense of falsely representing oneself as a United States citizen), *and United States v. Lamere*, 980 F.2d 506, 516-17 (8th Cir. 1992) (rejecting enhancement when the obstruction—concealing counterfeit money from investigators—was identical to the offense of possessing or concealing counterfeit money), *with United States v. Oladipupo*, 346 F.3d 384, 385-86 (2d Cir. 2003) (per curiam) (affirming enhancement when the obstruction—filling out an affidavit containing a false identity—was different from the offense of illegal reentry after deportation), *and United States v. Sabino*, 307 F.3d 446, 451 (6th Cir. 2002) (reversing ruling that imposition of enhancement was impermissible double-counting when the alleged obstruction—testifying falsely before a grand jury—did not arise from "precisely the same" conduct as did the underlying conspiracy offense (emphasis & internal quotation marks omitted)).[11] Here, the conduct giving rise to Hughes' bankruptcy fraud convictions included making false statements on the bankruptcy schedules, concealing assets from the bankruptcy trustee, and transferring assets for sale by the auction houses without the trustee's permission. In contrast, the conduct giving rise

offense will be grouped with the count for the underlying offense . . . . The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.

The district court calculation comported with these instructions.

[11]*See also United States v. Mutuc*, 349 F.3d 930, 938 (7th Cir. 2003) (affirming obstruction enhancement to underlying bankruptcy fraud offense level). The facts of *Mutuc* are similar to those here: The defendant committed perjury in the context of a bankruptcy proceeding. He was convicted of bankruptcy fraud, and the court upheld a two-level obstruction enhancement to account for the defendant's perjury. However, the issue of double-counting was neither raised nor addressed by the court, so *Mutac* cannot be regarded as directly on point.

to the two-level enhancement for obstruction of justice consisted of Hughes' perjury before the bankruptcy court. Because the conduct giving rise to Hughes' bankruptcy fraud convictions was not identical to that giving rise to the obstruction enhancement, the district court did not err in applying the two-level enhancement under § 3C1.1.[12]

Additionally, we note that our conclusion is consistent with Application Note 7 of § 3C1.1, which prohibits an obstruction enhancement if the defendant's underlying conviction is itself for an obstruction offense, unless the conduct further obstructed the investigation, prosecution, or sentencing of the obstruction offense significantly. *See* U.S.S.G. § 3C1.1, comment. (n.7). Note 7 enumerates those offenses that are considered obstruction offenses for purposes of this limitation: contempt, obstruction of justice, perjury or subornation of perjury, bribery of witness, failure to appear by material witness, failure to appear by defendant, payment to witness, accessory after the fact, or misprision of felony. *See id.* By enumerating a list of obstruction offenses and prohibiting enhancements to those offenses for obstructive conduct, the guidelines appear already to account for impermissible double-counting in this context. That bankruptcy fraud is not included in this enumerated list further supports our conclusion that the enhancement to Hughes' offense level did not reflect impermissible double-counting. The district court determination on this issue is therefore affirmed.

---

[12]We note that our decision may be in tension with the Eighth Circuit decision in *United States v. Lloyd*, 947 F.2d 339 (8th Cir. 1991) (per curiam). There, the defendant was convicted of bankruptcy fraud and received an obstruction enhancement for concealing assets from the bankruptcy trustee and for committing perjury during the bankruptcy proceedings. The court of appeals reversed the enhancement because "[t]his conduct [was] the basis for the criminal charges against Lloyd." *Lloyd*, 947 F.2d at 340. It is unclear from the very brief opinion which conduct the court was referring to as "[t]his conduct." If the court was referring to the concealment of assets, *Lloyd* is in accord with the above-cited cases, because "concealing assets" was the conduct giving rise to Lloyd's bankruptcy fraud conviction. *Id.* However, to the extent the court was referring to the perjury, *Lloyd* contradicts the above cases because the perjury was not the conduct giving rise to the bankruptcy fraud conviction, yet the court still found impermissible double-counting.

2.

Hughes next asserts that his perjurious statements were made in the bankruptcy court, not in the district court, and therefore fall outside the scope of the "investigation, prosecution, or sentencing of the *instant offense* of conviction." U.S.S.G. § 3C1.1(A) (emphasis added). The district court rejected this narrow interpretation of § 3C1.1: "The whole transaction involving the defendant was being investigated by [the bankruptcy court]," and Hughes' perjury "was part and parcel of the whole transaction." J.A. 359-60. The conclusion of the district court was correct. "'[I]nstant offense' in § 3C1.1 refers to the offense of conviction *including relevant conduct*." *United States v. Self*, 132 F.3d 1039, 1044 (4th Cir. 1997) (emphasis added). Here, the "instant offense[s]" were the bankruptcy fraud charges. Hughes' perjurious statements before the bankruptcy court fall within the definition of "relevant conduct" because they were "committed . . . by the defendant . . . during the commission of the offense of conviction . . . or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1) (defining relevant conduct). Therefore, under *Self*, Hughes' perjurious statements fall within the scope of "the instant offense of conviction," and the district court conclusion to that effect is affirmed. *Accord United States v. Bennett*, 252 F.3d 559, 566 (2d Cir. 2001) (upholding obstruction enhancement when defendant obstructed investigation by Securities and Exchange Commission that occurred before defendant was indicted).

3.

Finally, Hughes argues that his perjurious statements were not obstructive because he never disputed the existence of the personal assets; rather, he simply lied about authorizing their sale by the auction houses. Thus, according to Hughes, his perjurious statements did not impede the investigation in any way. The district court disagreed, finding that Hughes' statements represented "willful obstruction of justice . . . during the investigation of the instant offense of conviction." J.A. 361.

We review the district court conclusion that Hughes' statements were obstructive for clear error. *See United States v. Kiulin*, 360 F.3d 456, 460 (4th Cir. 2004). Because the bankruptcy court was investi-

gating all aspects of Gerstenfeld's Chapter 11 petition, including the location and value of her personal assets and whether they had been transferred to the auction houses, we find that the conclusion of the district court that Hughes' perjurious statements were obstructive is not clearly erroneous.

V.

For the reasons set forth above, we affirm Hughes' convictions. We also conclude that the district court did not err in its initial calculation of the guideline range. However, in light of *Booker*, we vacate Hughes' sentence and remand for resentencing. Because we conclude that the district court correctly determined the range prescribed by the guidelines, on remand the court shall consider that range[13] as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS*

---

[13]Of course, if new circumstances have arisen or events occurred since Hughes was sentenced that impact the range prescribed by the guidelines, the district court should adjust its calculation accordingly.