Filed: March 8, 2005

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 03-4379

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DERRELL LAMONT GILCHRIST,

Defendant - Appellant.

**O R D E R**

On January 25, 2005, Darrell Lamont Gilchrist filed a petition for rehearing with a suggestion for rehearing en banc to which the government filed a response on February 11, 2005. Having reviewed Gilchrist's petition, the panel is of the opinion that Gilchrist's convictions should be affirmed for the reasons stated in the panel opinion. However, the panel is of the opinion that Gilchrist's sentences must be vacated and the case remanded for resentencing in light of United States v. Booker, 125 S. Ct. 738 (2005), which was decided after the panel opinion issued in this case.

Accordingly, Gilchrist's petition for rehearing is granted solely on the issue of whether he is entitled to be resentenced. No member of this court having asked for a poll on the petition for rehearing <u>en banc</u>, the petition for rehearing <u>en banc</u> is denied.

Entered at the direction of Senior Judge Hamilton with the concurrences of Judge Niemeyer and Judge Luttig.

**For the Court**

/s/ Patricia S. Connor

Clerk of Court

2

LUTTIG, Circuit Judge, concurring:

I concur in the order of remand, although I do not believe that such is absolutely necessary.

Because this case comes to us on plain error review and because our court's opinion in United States v. Hughes, 396 F.3d 374 (4th Cir. 2005), remains an important part of the ongoing dialogue in the courts of appeals as to the reach of Rule 52(b) in the wake of United States v. Booker, 125 S. Ct. 738 (2005), I write below to explain why I believe that our court erred, and fundamentally so, in its application of Rule 52(b) in Hughes.

In order for a defendant to prevail under Rule 52(b), "there must be an 'error' that is 'plain' and that 'affects substantial rights.'" United States v. Olano, 507 U.S. 725, 732 (1993). The defendant bears the burden of establishing that an error affected his substantial rights and must demonstrate that "the error actually affected the outcome of the proceedings." United States v. Hastings, 134 F.3d 235, 240 (4th Cir. 1998) (emphasis added). In the context of an error relating to the imposition of sentence, a defendant "must establish that [the imposed] sentence was longer than that to which he would otherwise be subject." United States v. Angle, 254 F.3d 514, 518 (4th Cir. 2001) (en banc). While the Supreme Court has variously articulated the requirement that a different result would have been likely or probable, see United States v. Dominguez Benitez, 124 S. Ct. 2333, 2342 (2004) (Scalia,

3

J. concurring), it has recently suggested that an offender can establish prejudice with a "showing of a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." Id. at 2339 (internal quotations omitted); see also United States v. Antonakopoulos, No. 03-1384, 2005 WL 407365, at *7-8 (1st Cir. 2005) (adopting the Dominguez Benitez "reasonable probability" standard for Booker claims). Because "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals," Olano, 507 U.S. at 732, the Supreme Court has admonished that we should only notice "particularly egregious errors . . . that seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Young, 470 U.S. 1, 15 (1985).

I believe Hughes erred with regard to its identification of the error, its determination of whether that error affected Hughes' substantial rights, and in its determination that it should exercise its discretion to recognize that error.

Proper application of Rule 52(b) depends upon an accurate understanding of the error committed which, in turn, requires an accurate understanding of Booker. It is as a consequence of its failure to understand Booker that Hughes has fundamentally misapplied the plain error doctrine in the wake of Booker.

In Booker, the Supreme Court held that judicial factfinding that results in an increase in an offender's sentence under the

4

"Guidelines as written" -- that is, the guidelines as "mandatory and binding on all judges" -- violates the Sixth Amendment. Booker, 125 S. Ct. at 750 (Stevens, J.). The Court's remedy for this constitutional infirmity, however, was not the abolition of judicial factfinding; rather, the Court severed entirely "the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C. § 3553(b)(1)," id. at 756 (Breyer, J.). The effect of this severance was to render the Guidelines advisory in all cases, not merely those cases in which the trial court impermissibly found facts in violation of the Sixth Amendment. Indeed, the Court specifically rejected the Government's proposal to treat the guidelines as mandatory in cases in which there was no constitutionally impermissible judicial factfinding, on the grounds of the Court's conclusion that "Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others." Id. at 768 (Breyer, J.); see also id. at 769 (Breyer, J.) ("[W]e must apply today's holdings -- both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act -- to all cases on direct review.").

Because of the constitutional violation identified in Booker and the remedy ordered by the Court, Booker errors can take two forms.

5

First, it is error if the sentencing court (1) within a mandatory guideline regime (2) found facts that resulted in an increase in the offender's sentence beyond that which would have been supported by the jury's findings. This error, which results in a violation of the Sixth Amendment, is the type of error that occurred in Booker's case. As the Court explained, the district court's error was that it "applied the Guidelines as written and imposed a sentence higher than the maximum authorized solely by the jury's verdict." Id. at 769 (Breyer, J.). Justice Breyer's reference to the "Guidelines as written" confirms that the district court's treatment of the Guidelines as mandatory was necessarily part of the error that occurred in Booker's case. See Booker, 125 S. Ct. at 750 ("The Guidelines as written, however, are not advisory; they are mandatory and binding on all judges.") (emphasis added).

Second, because the Court held that the remedy for impermissible judicial factfinding in violation of the Sixth Amendment was the severance of the provision that made the Guidelines mandatory (rendering them in all cases advisory), it is also error if the sentencing court merely imposed a sentence under the Guidelines "as written," that is, as mandatory. This second type of error, which does not entail a violation of the Sixth Amendment because the district court did not find facts impermissibly, is the type of error that occurred in Fanfan's case.

6

While it is possible for a sentencing court to have erred under Booker in either of these two respects, it must be understood that a court will not have erred in either respect provided that it sentenced the offender under the Guidelines as advisory only. And this even if the court increased the offender's sentence based upon facts beyond those found by the jury.

Hughes' mistake is evident from the first step of its plain error analysis -- namely the identification of the error committed by the district court. The panel in Hughes concluded that the relevant error under Booker was simply the "imposition of a 46-month sentence, in part based on facts found by the judge." Id. at 379. The court did not consider as error the district court's application of the Guidelines in their mandatory form. Indeed, Hughes suggests that the district court should have applied the Guidelines in their mandatory form, but simply have relied only on the facts found by the jury. Id. ("Here, under the mandatory guideline regime in existence at the time of sentencing, that maximum would have been calculated according to an Offense Level of 10 . . . which is the maximum authorized by the facts found by the jury."). By failing to recognize as error the district court's imposition of sentence on the assumption that the Guidelines were mandatory, Hughes failed to take into account the entirety of the holding of Booker -- both its conclusion of Sixth Amendment violation and its ordered remedy. In effect, the Hughes court

7

divorced the fact of the district court's impermissible factfinding from the fact that such factfinding was only impermissible because of the district court's assumption that the Guidelines were mandatory. And in so doing, Hughes failed to appreciate the central premise of Booker, namely that "[i]f the Guidelines . . . could be read as merely advisory . . . [then] the selection of particular sentences in response to differing sets of facts . . . would not implicate the Sixth Amendment." Booker, 125 S. Ct. at 750 (Stevens, J.).

A sentencing court's error must be defined by reference to what the district court should have done in light of the entire holding of Booker; not merely by reference to the Sixth Amendment violation identified in Booker. The error in Hughes thus was like that in Booker's case, namely judicial factfinding coupled with the imposition of sentence under the Guidelines "as written," or as mandatory rather than advisory. The error was not, as Hughes holds, that the district court merely failed to impose a sentence on the basis of the facts as found by the jury, instead imposing "a 46-month sentence, in part based on facts found by the judge." Id. at 379.

That the Hughes panel did so err is confirmed by Booker's instructions regarding the continuing vitality of the Guidelines and the necessary implication that district courts may continue to impose sentences based on extra-verdict factfinding. Indeed, after

8

Booker, sentencing courts still "must consult [the] Guidelines and take them into account when sentencing," Booker, 125 S. Ct. at 768 (Breyer, J.), and "consider the Guidelines sentencing range established for . . . the applicable category of defendant." Id. at 764 (Breyer, J.). Consideration of the applicable Guidelines range for a particular defendant, of course, will continue to include the district court's consideration of facts not found by a jury or included in a plea agreement. The Hughes panel itself reached the same conclusion, though it failed to recognize the implications of that conclusion, holding that "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." Hughes, 396 F.3d at 378-79 (emphasis added).

The error in Hughes' formulation is further confirmed by the Supreme Court's treatment of Fanfan's claim. "In . . . Fanfan's case, the District Court . . . imposed a sentence that was authorized by the jury's verdict -- a sentence lower than the sentence authorized by the Guidelines as written." Id. Despite the fact that there was no Sixth Amendment violation, the Court vacated and remanded the sentence in order to permit the Government to seek resentencing, presumably based on the extra-verdict facts that the district court had refused to consider. Id. Thus, the Court rejected Hughes' implicit suggestion that the district court

would not have erred had it only considered the facts found by the jury.

Having failed to correctly identify the error committed by the district court, the Hughes panel compounded its error by holding that Hughes' substantial rights had been affected because he would have received a lower sentence had the district court imposed Hughes' sentence in accordance with the facts found by the jury. Hughes, 396 F.3d at 380 ("Had the district court imposed a sentence within that maximum [the maximum authorized by the facts found by the jury alone], Hughes' sentence would have been . . . markedly lower."). Had the district court applied the entire holding of Booker, however, it would have made the same factual findings; it simply would have treated the Guidelines as advisory, with respect to the sentence to be imposed in light of those findings. Accordingly, prejudice must be determined by comparing what the district court did under a mandatory regime to "what the district court would have done had it imposed a sentence in the exercise of its discretion pursuant to § 3553(a)," id. at 380 n.6 -- an inquiry expressly rejected in Hughes.[1] Under such an analysis, as even the

---

[1] Hughes believed it critical, if not dispositive, in rejecting the prejudice inquiry mandated by Booker that "Hughes [did] not argue that the district court erred by failing to regard the guidelines as advisory . . . . Rather, Hughes argues that the district court erred by imposing a sentence that was greater than the maximum authorized by the facts found by the jury alone." Hughes, 396 F.3d at 380 n.6. But the Supreme Court's holding in Booker, not the litigant's self-serving formulation of his claim, defines the relevant legal error and prejudice inquiry. See United

10

panel in <u>Hughes</u> conceded, Hughes failed to establish prejudice because it "simply [did] not know how the district court would have sentenced Hughes had it been operating under the regime established by <u>Booker</u>."  <u>Hughes</u>, 396 F.3d at 381 n.8; <u>see</u> <u>Jones</u> v. <u>United States</u>, 527 U.S. 373, 390 (1999) ("Where the effect of an alleged error is . . . uncertain, a defendant cannot meet his burden [under Rule 52(b)] of showing that the error actually affected his substantial rights.").[2]

That such a comparison is compelled by <u>Booker</u> is confirmed by the sentencing method district courts are required to employ on remand, even under <u>Hughes</u>.  As the disposition of Fanfan's case confirms, district courts are not free to disregard extra-verdict facts; rather, district courts must "calculate (<u>after making the appropriate findings of fact</u>) the range prescribed by the guidelines," <u>id</u>. at 378-79 (emphasis added), and consider that range in exercising its discretion pursuant to section 3553(a).

---

States v. <u>Rodriguez</u>, No. 04-12676, 2005 WL 272952, at *12 (11th Cir. 2005) ("We disagree with the notion [in <u>Hughes</u>] that the defendant can define the constitutional error, and thereby predetermine the third prong of the plain error test, by the phrasing of his argument.").

[2] For the same reason, in cases where an offender has preserved his <u>Booker</u> challenge, it is unlikely that the Government will be able to establish that such an error is "harmless beyond a reasonable doubt" as it is required to do in order to prevail under Rule 52(a).  <u>See</u> <u>Neder</u> v. <u>United States</u>, 527 U.S. 1, 7 (1999).

11

The Hughes panel erred in its final step as well, exercising its discretion to notice the error on the grounds that "Booker wrought a major change in how federal sentencing is to be conducted," Hughes, 396 F.3d at 380, and because "[t]he fact remains that a sentence has yet to be imposed under a regime in which the guidelines are treated as advisory." Id. at 381 n.8. While the latter observation is correct -- and, indeed, highlights the Hughes panel's erroneous identification of the relevant error -- affirming pre-Booker sentences will not undermine the "fairness, integrity or public reputation of judicial proceedings." Hastings, 134 F.3d at 244 (internal quotation marks omitted). As the Government explains in its well-taken petition for en banc rehearing in Hughes, Hughes "was sentenced under a system that was used for almost two decades to sentence hundreds of thousands of offenders." And the sentence he received "represent[ed] a 20-year effort by the Sentencing Commission to formulate and update sentencing policy to reflect the collective wisdom of Congress and the judiciary; to assign carefully calibrated weights to factors, both aggravating and mitigating, that judges have traditionally used in determining appropriate sentences; and to account for the sentencing purposes identified in 18 U.S.C. § 3553(a)." United States' Petition for Rehearing En Banc at 14-15, Hughes, 396 F.3d 374.

12

In stark contrast, the Hughes panel's sweeping conclusions in defense of its decision to notice the error in that case would compel remand in every case where we must apply Rule 52(b) to Booker errors. The court itself said in Hughes:

> [I]t is not enough for us to say that the sentence imposed by the district court is reasonable irrespective of the error. The fact remains that a sentence has yet to be imposed under a regime in which the guidelines are treated as advisory. To leave standing this sentence simply because it falls within the range of reasonableness unquestionably impugns the fairness, integrity, or public reputation of judicial proceedings.

Hughes, 396 F.3d at 381 n.8. As this quotation makes clear, Hughes' defense of its exercise of discretion does not rest on the presence of a Sixth Amendment violation. Rather, it applies to all sentences imposed pre-Booker –- including those imposed pursuant to our direction in United States v. Hammoud, 381 F.3d 316 (4th Cir. 2004), for even in those cases the sentence received by the offender was not "imposed under a regime in which the guidelines are treated as advisory."

Likewise, while Hughes does not address prejudice in the context of a case without a Sixth Amendment violation, its defense of its exercise of discretion compels the conclusion that every sentence imposed pre-Booker violated the offender's substantial rights. Otherwise, we would find ourselves in the indefensible position of holding that a Booker error did not affect an offender's substantial rights even though, under Hughes, such errors must be classified as egregious errors that result in the

13

miscarriage of justice. <u>Hughes</u>, in sum, would require us to vacate and remand every pre-<u>Booker</u> sentence on appeal, a result demonstrably at odds with that contemplated by the Supreme Court. <u>Booker</u>, 125 S. Ct. at 769 (Breyer, J.) ("Nor do we believe that ever appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain error' test.").

It is for the foregoing reasons that I believe that our decision in <u>United States</u> v. <u>Hughes</u> was fundamentally flawed.