**UNITED STATES of America, Plaintiff,**

v.

**Omar Alcides RAMIREZ–RAMIREZ, Defendant.**

No. CR.A. 1:04CV458.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 18, 2005.

---

Louis Ruffino, Esquire, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff's Counsel.

Anne Chapman, Esquire, Assistant Federal Public Defender, Office of the Federal Public Defender for the Eastern District of Virginia, Alexandria, VA, for Defendant's Counsel.

### *MEMORANDUM OPINION*

LEE, District District Judge.

THIS MATTER was before the Court for sentencing of Defendant Omar Alcides Ramirez–Ramirez ("Mr. Ramirez") on February 18, 2005. The parties submitted to the Court their positions with respect to sentencing factors. Furthermore, the Court has received the presentence report from the probation officer, which includes guideline calculations, pursuant to 18 U.S.C. § 3552 and Rule 32 of the Federal Rules of Criminal Procedure. After consideration of the sentencing guidelines, as well as other relevant factors set forth in 18 U.S.C. § 3553(a), the Court sentenced Defendant Omar Alcides Ramirez–Ramirez to imprisonment for a term of twenty-four months in the custody of the Bu-

reau of Prisons, two years of supervised release, and other conditions as set forth in the Judgment entered by this Court on February 28, 2005.

## I. BACKGROUND

The defendant pled guilty to illegal reentry after removal following a conviction for an aggravated felony, in violation of Title 8, United States Code, Section 1326 as modified by Title 6, United States Code, Sections 202(3) and (4), 542(d), and 557.

## II. DISCUSSION

### A. Standard of Review

In *United States v. Booker*, the Supreme Court ruled that the mandatory nature of the United States Sentencing Guidelines is unconstitutional. *See United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 765, 160 L.Ed.2d 621 (2005). In *United States v. Hughes*, 396 F.3d 374 (4th Cir.2005), the Fourth Circuit stated:

> Consistent with the remedial scheme set forth in *Booker*, a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then the court shall consider that range as well as other relevant factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*Id.*, 396 F.3d at 378–79.

Section 3553(a) requires district courts to impose a sentence "sufficient but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2): retribution, deterrence, incapacitation, and rehabilitation.

### B. Analysis

#### 1. United States Sentencing Guidelines Range

The Court finds that the appropriate guideline range is 57–71 months, as calcu-

lated in the amended Presentence Report. Specifically, the Court finds that Mr. Ramirez's conviction for "indecency with a child" qualifies as a "crime of violence" for purposes of the aggravated felony sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(1). *See United States v. Zavala–Sustaita,* 214 F.3d 601 (5th Cir. 2000) (holding that violation of Texas Penal Code section 21.11 constituted an aggravated felony (specifically, sexual abuse of a minor) for purposes of 16 level enhancement under U.S.S.G. § 2L1.2 for deportation after conviction for aggravated felony).

### 2. Factors under 18 U.S.C. § 3553(a)

### a. The Nature and Circumstances of the Offense

One of the factors the Court is directed to consider under section 3553(a) is the nature and circumstances of the offense. In this case, Mr. Ramirez plead guilty to reentering the United States after having been deported and having been convicted of a prior aggravated felony. The felony was a 1995 conviction of indecency with a child in Galveston County, Texas. The conviction occurred when Mr. Ramirez was nineteen, and it involved kissing and heavy petting with a girl that was fifteen or sixteen years old. *See* Def.'s Pos. Sentencing Factors at 5 [hereinafter "Def.'s Pos."].

### b. The Circumstances and History of the Defendant

Section 3553(a) also directs the Court to consider the circumstances and history of the defendant when determining the appropriate sentence. Mr. Ramirez is a thirty-two year old El Salvadorian man. Although he has an extensive criminal history, aside from the conviction explained above, that history largely consists of petty theft and glue huffing. Def.'s Pos. at 6. Mr. Ramirez came to the United States alone at the age of fifteen to escape the El Salvadorian military and the civil war that was raging there.

Mr. Ramirez was granted political asylum in the early 1990s, because of the bruality and suffering he endured in El Salvador. *Id.* The Refugee Act states in part that asylum is to be granted to any person who is outside their country and unable or unwilling to return "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Mr. Ramirez was drafted into the El Salvadorian army at age thirteen and served in this brutal regime for two years until he escaped to the United States. Def.'s Pos. at 6. During the 1980–1992 civil war in El Salvador, children were forcibly recruited and used for armed military duty as well as messengers and informers and were forced to carry out horribly violent acts. *Id.* The fighting between government forces and the revolutionary Farabundo Marti Front for National Liberation (FMLN) left 75,000 dead and over a million displaced. *See* Nicole Hertvik, El Salvador: Effecting Change from Within, UNITED NATIONS CHRONICLE ONLINE EDITION, available at: http://www.un.org/Pubs/chronicle/2002/issue3 /0302p75_el_salvador.html. In fact, during the civil war,

> [n]inety-five percent of the violent acts documented were found to have been committed by the military, government security forces and death squads. Intimidation, death threats, executions and disappearances were found to be common tools used against opposition voices, human rights activists and suspected rebels. In addition, the judicial system was found to be 'incapable of fairly assessing and carrying out punishment.'

*Id.* After suffering through these horrendous conditions, Mr. Ramirez traveled from El Salvador to the United States

when he was fifteen and was granted asylum. *Id.*

### c. The Need to Avoid Unwarranted Sentencing Disparities

The need to avoid unwarranted sentencing disparities is another consideration under section 3553(a). There is an unwarranted sentencing disparity under the guidelines for § 1326 offenders. *See U.S v. Jose Galvez–Barrios*, 355 F.supp.2d 958, 960 (E.D.Wis. 2005). The United States Sentencing Commission reports that in 2002, the rate for downward departures from the sentencing guidelines in immigration cases nationwide, excluding those made on the basis of substantial assistance, nationwide was 31.1%, while in the Fourth Circuit the rate was 3.9%.[1] The sentencing commission also reports that in 2002 the mean sentence was 31 months while the median was 27 months.[2] By comparison, the national mean that year was 25.3 months and the national median was 24 months. *Id.*

There are also sentencing disparities in immigration cases in "fast track" districts. *See generally*, Erin T. Middleton, *Fast–Track to Disparity: How Federal Sentencing Policies Along the Southwest Border are Undermining the Sentencing Guidelines and Violating Equal Protection*, 2004 UTAH L. REV. 827. "Fast-track" programs encourage a defendant who will ultimately plead guilty to plead within a specified period of time in exchange for a reduced sentence. *Id.* at 829. The programs were initially established in judicial districts along the southwest to accommodate the large number of immigration cases. Pursuant to the 2003 Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today ("PROTECT") Act, the Sentencing Commission promulgated U.S.S.G. § 5K3.1, which states that upon the government's motion, the court may depart downward not more than four levels "pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." U.S.S.G § 5K3.1.

In the District of Arizona, where "fast track" treatment is available for immigration cases, in 2001 the average incarceration sentence for immigration offenses was 29.1 months.[3] Only 20.9% of immigration offenses in the District of Arizona were sentenced within the Guideline Range and 77.3% involved downward departures not related to substantial assistance.[4] During the same time period, in the Southern District of California, where the "fast track" program is also available, the average sentence for an immigration offense was 17.4 months,[5] with a 27.5% downward departure rate for grounds other than substantial assistance.[6] In the Southern Dis-

---

1. U.S. SENTENCING COMM'N, OFFICE OF POLICY ANALYSIS, GUIDELINE DEPARTURE RATE BY PRIMARY OFFENSE CATEGORY, FISCAL YEAR 2002, FOURTH CIRCUIT, TABLE 9, available at http://www.ussc.gov/JUDPACK/2002/4c02.pdf.

2. U.S. SENTENCING COMM'N, OFFICE OF POLICY ANALYSIS, GUIDELINE DEPARTURE RATE BY PRIMARY OFFENSE CATEGORY, FISCAL YEAR 2002, FOURTH CIRCUIT, TABLE 7, available at http://www.ussc.gov/JUDPACK/2002/4c02.pdf.

3. FEDERAL JUSTICE STATISTICS RESOURCE CENTER, AVERAGE INCARCERATION SENTENCE IMPOSED FOR ALL OFFENSES BY DISTRICT, 2001, available at http://fjsrc.urban.org/noframe/dist/d2001/cat/s7_tl.pdf.

4. FEDERAL JUSTICE STATISTICS RESOURCE CENTER, SENTENCES WITHIN AND DEPARTING FROM THE U.S. SENTENCING GUIDELINES FOR IMMIGRATION OFFENSES, BY DISTRICT, 2001, available at

5. U.S. SENTENCING COMM'N, FOURTH CIRCUIT, TABLE 9, *supra* note 1.

6. U.S. SENTENCING COMM'N, FOURTH CIRCUIT, TABLE 7, *supra* note 2.

trict of California defendants subject to twenty-year statutory maximums and guideline ranges of 70–87 months are permitted under the "fast track" program to plead guilty to offenses with a two-year statutory maximum. *See Galvez–Barrios,* at 960 (citing *U.S. v. Banuelos–Rodriguez,* 215 F.3d 969 (9th Cir.2000)). In New Mexico, where the "fast track" program is also available, the average sentence in 2001 for an immigration offense was 22.3 months,[7] with a downward departure rate of 53%.[8] In the Southern District of Texas, the average sentence for immigration offenses was 28.2 months,[9] with a 32.5% non-substantial assistance downward departure rate.[10]

In contrast, in the Eastern District of Virginia, where no "fast track" program is available, the average sentence for an immigration offense in 2001 was 34.2 months,[11] with a departure rate of zero.[12] An average sentence in the Eastern District of Virginia was 5.1 months, 16.8 months, 11.9 months, and 6 months higher than those imposed for a similar immigration offense in Arizona, the Southern District of California, New Mexico and the Southern District of Texas, respectively. *See* Defs. Pos. at 11. The overall rate for downward departures for immigration offenses, not related to substantial assistance in immigration cases was 38.1%, versus the zero percent rate in this district in 2001.

Mr. Ramirez's guideline range as calculated by the Presentence Report is 46–57 months. In some cases, under *Booker* and 18 U.S.C. § 3553(a), it may be appropriate for the Court to exercise its discretion in order to minimize the sentencing disparities that exist in cases involving illegal re-entry. *See Galvez–Barrios,* at 961. As another court stated, "it is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested." *United States v. Bonnet–Grullon,* 53 F.Supp.2d 430, 435 (S.D.N.Y.1999), *aff'd,* 212 F.3d 692 (2d Cir.2000); *see also Galvez–Barrios,* at 962.

### d. The Needs of the Public

In determining the appropriate sentence for Mr. Ramirez, the Court has considered the needs of the public, including the need to promote respect for immigration laws and to deter re-entry by felons. In this case, the goal of deterrence has been met because Mr. Ramirez has not previously been incarcerated related to any immigration offense, has accepted full responsibility, and understands that he cannot return to the United States. *See* Def. Pos. at 13. As a deportable alien, he must be housed in at least a low security prison, rather than a minimum security "camp" facility regardless of his cooperation or the lack of prior evidence of violence. Further, he is ineligible for early release to a community correction facility. *See* Bureau of Prisons Program Statement 5100.07. These security limitations also preclude Defendant from early release upon completion of the intensive drug treatment program. *See* 28 C.F.R. §§ 524.31(a)(4), 550.58(a)(i).

In addition, after service of his sentence, the defendant will be released to the custo-

---

**7.** U.S. Sentencing Comm'n, Fourth Circuit, Table 9, *supra* note 1.

**8.** U.S. Sentencing Comm'n, Fourth Circuit, Table 7, *supra* note 2.

**9.** U.S. Sentencing Comm'n, Fourth Circuit, Table 9, *supra* note 1.

**10.** U.S. Sentencing Comm'n, Fourth Circuit, Table 7, *supra* note 2.

**11.** U.S. Sentencing Comm'n, Fourth Circuit, Table 9, *supra* note 1.

**12.** U.S. Sentencing Comm'n, Fourth Circuit, Table 7, *supra* note 2.

dy of the Department of Homeland Security ("DHS") for removal from the United States. Release into DHS custody can, and generally does, mean a further term of detention until his removal has been completed. When a defendant will ultimately be removed and sent out of the country, there is less need for the sentence imposed to protect the public from further crimes of the defendant, or to provide the defendant with needed educational or vocational training. See 18 U.S.C. § 3553(a)(2)(C),(D). Mr. Ramirez's sentence protects the public because Mr. Ramirez will be deported subsequent to serving his sentence.

## III. CONCLUSION

In consideration of the sentencing guidelines, the factors in *Booker* and *Hughes* and 18 U.S.C. § 3553(a), the Court holds that a sentence of twenty-four months in the custody of the Bureau of Prisons and other conditions as set forth in the Judgment is the appropriate sentence for Mr. Ramirez. For the foregoing reasons, and the reasons stated in open court on February 18, 2005, it is hereby

ORDERED that the Defendant Omar Alcides Ramirez–Ramirez is committed to the Bureau of Prisons for twenty-four months. Other conditions of the sentence appear in the Judgment.

The Clerk is directed to forward a copy of this Order to Counsel.