# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-3317

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Berlynda Montez Brown, | * |
| | * |
| Appellant. | * |

_____

No. 02-3895

_____

Appeals from the United States
District Court for the
Eastern District of Arkansas.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Desmond Antony Pennicot, also known | * |
| as David Anthony Brown, | * |
| | * |
| Appellant. | * |

_____

Submitted: April 15, 2003

Filed: June 11, 2003
_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.
_____

BEAM, Circuit Judge.

Berlynda Montez Brown (Brown) and Desmond Antony Pennicot (Pennicot) were charged in a two-count indictment with conspiracy to possess with intent to distribute and possession with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court[1] refused to accept Brown's guilty plea and denied Pennicot's motion for severance. After being convicted at a joint jury trial, Brown was sentenced to 51 months' imprisonment for each count, running concurrently, and 4 years of supervised release, and Pennicot was sentenced to 120 months' imprisonment for each count, also running concurrently, and 8 years of supervised release. Both Brown and Pennicot appeal their sentences. We affirm.

I. BACKGROUND

On November 27, 2001, Brown was stopped by an Arkansas Highway Police officer, Jack Stepp ("Officer Stepp"), for passing a car while driving on the shoulder

_____

[1]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

of Interstate 40 in Arkansas. Upon reaching the rented van Brown was driving,[2] Officer Stepp noticed the strong odor of air freshener. When asked for identification, Brown presented her driver's license and a retired police officer badge. Officer Stepp also noticed a brown powder-like substance, along with several air freshener containers, on the passenger side of the van.

After writing Brown a warning ticket for the traffic violation, Officer Stepp returned to Brown's vehicle and, while there, noticed blankets covering items in the back of the van. Officer Stepp asked Brown if the van contained any illegal items, and Brown responded in the negative. Brown consented to a search of the van. When Officer Stepp, a police officer with fourteen years of experience, opened the side door of the van to begin the search, he smelled an odor he identified as marijuana. Officer Stepp then moved one of the blankets to reveal a box, which, when opened, revealed bundles of "green vegetable material." Six boxes, containing 96 bundles of marijuana, were found in the van. The marijuana weighed a total of 292 pounds. Subsequently, Officer Stepp arrested Brown. After waiving her Miranda rights, Brown told Officer Stepp that someone had asked her to take "the stuff" from San Diego to Fayetteville, North Carolina.

In an unrelated traffic stop that same morning, Christopher Reid ("Reid"), who was also charged in the indictment in this case, was stopped on Interstate 40 by Officer Kyle Drown of the Arkansas State Police for following another car too closely. Officer Drown noticed a strong odor of lemon deodorizer, and he also noticed a blanket covering a large object in the back of the rented sport utility vehicle. After apparently receiving consent from Reid to search the vehicle, Officer Drown presented his trained drug dog in an effort to detect the odor of narcotics. The dog alerted at the rear of the vehicle, and Officer Drown opened the back of the truck.

---

[2]The van was rented in San Diego, California, on November 23, 2001, and it was due for return in San Diego on December 1, 2001.

Upon doing so, he noticed a "very overpowering odor of fresh marijuana," as well as two large boxes containing several bundles of marijuana. The marijuana contained in these bundles weighed a total of 143 pounds.

After his arrest, Reid cooperated with the government and provided information about the transportation of drugs by Brown, Pennicot, and himself from California and Arizona to North Carolina. Based on this information, Officer Nick Phillips of the Arkansas Highway Police was contacted. He was asked to watch along Interstate 40 for a silver Chevrolet TrailBlazer with a North Carolina license plate, a vehicle being driven by Pennicot. Officer Phillips located the vehicle in question and stopped it for crossing the white line and driving on the shoulder of the road. Officer Phillips requested permission to search the vehicle because Pennicot[3] seemed nervous. Pennicot consented to a search of the vehicle, but no drugs were found.

Officer Phillips did not place Pennicot under arrest, and Pennicot agreed to travel to the Crittenden County, Arkansas, sheriff's office for additional questioning, even though he was not under arrest.[4] While at the sheriff's office, Pennicot began to talk about drugs. At this point, Officer Phillips advised Pennicot of his <u>Miranda</u> rights and Pennicot signed a waiver form. Pennicot admitted to playing a role in transporting the marijuana found in Brown's and Reid's vehicles from Arizona and California to North Carolina.

Brown, Pennicot, and Reid were charged with trafficking the amount of marijuana found in both Reid's and Brown's vehicles – 435 pounds (197.3 kilograms) total. Reid pleaded guilty and was sentenced to 37 months' imprisonment and 5 years

---

[3]When he was pulled over by Officer Phillips, Pennicot identified himself as "David A. Brown, Jr."

[4]According to Officer Phillips's testimony, Pennicot was free to leave at any time while he was at the sheriff's office because he was not in a holding cell.

of supervised release.  Brown attempted to plead guilty, but the district court refused to accept her plea, indicating that a factual basis for the plea did not exist because Brown failed to admit knowing the quantity of drugs in her rented van.  The district court also denied Pennicot's motion for severance prior to trial.  As indicated, the jury found both Pennicot and Brown guilty of conspiracy to possess with intent to distribute and distribution of more than 100 kilograms of marijuana.

## II.    DISCUSSION

### A.    Berlynda Montez Brown

Brown contends that the district court erred in failing to accept her guilty plea. There is "no absolute right to have a guilty plea accepted" and a district court "may reject a plea in exercise of *sound* judicial discretion."  Santobello v. New York, 404 U.S. 257, 262 (1971) (emphasis added).  Rule 11(b)(3) of the Federal Rules of Criminal Procedure, formerly Rule 11(f), requires that a guilty plea must have a factual basis.

> For the purposes of [Rule 11(b)(3),] . . . a factual basis for a plea of guilty is established when the court determines there is sufficient evidence at the time of the plea upon which the court may reasonably determine that the defendant likely committed the offense.  This determination is satisfied if the transcript describes the acts to which the defendant pleaded guilty.

United States v. Marks, 38 F.3d 1009, 1012 (8th Cir. 1994) (citations omitted).  In this case, the district court rejected Brown's guilty plea because it determined that she failed to acknowledge that she possessed a sufficient amount of marijuana to warrant a conviction under the indictment.  During her plea hearing, Brown testified that she did not know the amount of marijuana that was in her rented van, although she admitted that she knew the boxes contained marijuana.

Our cases dealing with Rule 11(b)(3) are most often cases where the defendant seeks to withdraw or dismiss a guilty plea by challenging the sufficiency of the factual basis established by the district court in accepting the plea. See, e.g., United States v. Gamble, No. 02-3707, slip op. at 3-5 (8th Cir. May 2, 2003); Marks, 38 F.3d at 1012-13; United States v. Abdullah, 947 F.2d 306, 308-09 (8th Cir. 1991). We have held that facts gathered from the prosecutor's summarization of the plea agreement and the language of the plea agreement itself, Abdullah, 947 F.2d at 308-309, a colloquy between the defendant and the district court, Marks, 38 F.3d at 1012-13, and the stipulated facts before the district court, Gamble, slip op. at 4, are sufficient to find a factual basis for a guilty plea. The court may also consider facts set forth in the presentence report to determine whether a factual basis for a guilty plea exists. 24 Moore's Federal Practice § 611.08[2][b] (3d ed. 1998) (citing United States v. Graves, 106 F.3d 342, 344 (10th Cir. 1997)).

In the present case, the government attorney, in explaining the facts the government would be prepared to prove at trial, stated that 292 pounds of marijuana were found in Brown's car and "approximately 150" pounds were found in Reid's car. When asked whether the government's characterization of the facts was "substantially correct," Brown responded in the affirmative. Additionally, the district court asked the government to summarize the terms of the plea agreement. The government stated, and Brown agreed, that the "plea agreement also notes an agreement among the parties asking that the Court accept a stipulated drug amount of not less than 100 kilograms of marijuana and not more than 400 kilograms of marijuana for all sentencing purposes, including relevant conduct."

Although we might believe that these admissions by Brown were enough to support her plea of guilty, we will not disrupt the decision of the district court. At the sentencing hearing, Brown was repeatedly equivocal on the state of her knowledge about the amount of marijuana she was carrying at relevant times. And, weight of the drugs was an element of the charged offense. "A district court necessarily possesses

*broad discretion* in deciding to accept or reject a guilty plea."  United States v. Bettelyoun, 503 F.2d 1333, 1336 (8th Cir. 1974) (emphasis added).  We hold that the district court did not abuse its broad discretion by refusing to accept Brown's guilty plea.

### B.  Desmond Antony Pennicot

Pennicot claims that the district court erred in denying his motion for severance.  We disagree.  Prior to trial, Pennicot filed a motion for severance from Brown, based on his concerns that he would be prejudiced by Brown's antagonistic defenses.

> "Generally, persons charged in a conspiracy should be tried together, especially when proof of the charges against the defendants is based upon the same evidence and acts.  Motions to sever rest in the sound discretion of the trial court and the denial of such motions is not grounds for reversal unless clear prejudice and an abuse of discretion are shown."

United States v. Washington, 318 F.3d 845, 858 (8th Cir. 2003) (quoting United States v. Arenal, 768 F.2d 263, 267-68 (8th Cir. 1985)).  Additionally, "[i]n ruling on a motion for severance the district court weighs the inconvenience and expense of separate trials against the prejudice resulting from a joint trial of codefendants."  United States v. Brim, 630 F.2d 1307, 1310 (8th Cir. 1980).

Pennicot argues that "[w]ithout a joinder of the trial, the jury would have never heard the testimony of Brown, and Pennicot would have only been accountable for the marijuana seized in the search of Reid's vehicle."  Brief of Appellant at 17. However, Pennicot fails to acknowledge that, even if the trials were severed, Brown could have given the same testimony at his separate trial.  Also, the basic facts established at trial were common to both defendants, so separate trials would have been inconvenient and expensive.  Therefore, Pennicot was not prejudiced by having

a joint trial. We hold that Pennicot has failed to show that his joint trial with Brown resulted in clear prejudice and that the district court did not abuse its discretion by denying his motion for severance.

## III.  CONCLUSION

For the reasons stated above, we affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.