# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1855

_____

United States of America,          *
                                   *
          Appellant,               *
                                   *        Appeal from the United States
     v.                            *        District Court for the
                                   *        Southern District of Iowa.
Juan Morales-Uribe,                *
                                   *
          Appellee.                *


_____

Submitted: November 15, 2006
    Filed: December 18, 2006

_____

Before GRUENDER, JOHN R. GIBSON and BOWMAN, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Juan Morales-Uribe pled guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). After determining a total offense level of 31 and an advisory guidelines sentencing range of 108 to 135 months, the district court sentenced Morales-Uribe to 60 months' imprisonment, approximately 44 percent below the bottom of the advisory range. For the reasons stated below, we vacate Morales-Uribe's sentence and remand for resentencing.

## I.    BACKGROUND

On January 25, 2005, law enforcement officers from the Mid-Iowa Narcotics Enforcement Task Force received information from a confidential informant that an individual named Diego was dealing methamphetamine in multi-ounce to pound quantities in Des Moines, Iowa.  The informant reported that Diego had sold him at least three pounds of methamphetamine between August 2004 and January 2005. Law enforcement officers subsequently identified Diego as Juan Morales-Uribe.  Between January 25, 2005, and February 24, 2005, the informant and the officers made three controlled purchases from Morales-Uribe.  These methamphetamine purchases, as well as the purchases made independently by the informant prior to January 25, 2005, totaled 1.46 kilograms of a substance containing methamphetamine and 57.7 grams of "actual," or pure, methamphetamine.

The task force executed search warrants at Morales-Uribe's residences on February 24, 2005.   These searches uncovered additional quantities of methamphetamine, equipment used in methamphetamine production and serialized currency used by the informant during the controlled purchases.  The officers arrested Morales-Uribe, and he was subsequently charged with one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), among other charges.  Morales-Uribe pled guilty to the conspiracy count on October 14, 2005, and the other charges were subsequently dismissed.

At Morales-Uribe's sentencing hearing, the district court and parties accepted without objection the presentence investigation report ("PSR").  The PSR assigned Morales-Uribe a base offense level of 34.  His offense level was then increased by two levels for using a minor in connection with the conspiracy.  *See* U.S.S.G. § 3B1.4. However, Morales-Uribe received a three-level reduction for acceptance of responsibility and an additional two-level reduction under the sentencing guidelines safety-valve provision.  U.S.S.G. §§ 2D1.1(b)(9), 5C1.2.  This resulted in a total

offense level of 31. With a criminal history category of I, the district court determined Morales-Uribe's advisory guidelines range to be 108 to 135 months. The district court also found Morales-Uribe to be safety-valve eligible under 18 U.S.C. § 3553(f), thereby freeing Morales-Uribe from the statutory mandatory minimum of 120 months' imprisonment. Citing its consideration of the 18 U.S.C. § 3553(a) factors, the district court varied downward and sentenced Morales-Uribe to 60 months' imprisonment. Although the district court recognized that Morales-Uribe was "a sophisticated and knowledgeable methamphetamine dealer on a significant scale," it justified the downward variance by stating that Morales-Uribe was eligible for the § 3553(f) safety-valve as a first-time offender whose crime did not involve violence, that he was not a manager or leader of the conspiracy, that a portion of the drugs attributed to him resulted from "six controlled purchases" by law enforcement authorities, and that the Government would deport Morales-Uribe following his term of imprisonment. Additionally, the district court appears to have considered Morales-Uribe's underprivileged background and his testimony at sentencing that his motivation for this crime was to gain money to provide surgery for his son's cancer.

## II. DISCUSSION

Because there is no dispute concerning the appropriate application of the guidelines, we need only determine whether the sentence imposed by the district court is reasonable. *United States v. Beal*, 463 F.3d 834, 836 (8th Cir. 2006). "We review the reasonableness of the ultimate sentence under an abuse of discretion standard, measuring the extent of a district court's variance from the advisory Guidelines range against the statutory factors contained in § 3553(a)." *United States v. Hodge*, Nos. 05-3633/05-3844, slip op. at 7 (8th Cir. Nov. 22, 2006). A district court abuses its discretion and applies an unreasonable sentence where it:

> fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error

of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case.

*United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005), *cert. denied*, --- U.S. ---, 126 S. Ct. 276 (2005). A sentence imposed within the advisory guidelines range is presumptively reasonable as the guidelines take the § 3553(a) factors into account in fashioning an advisory sentencing range. *United States v. McDonald*, 461 F.3d 948, 952-53 (8th Cir. 2006). Thus, "the farther the district court varies from the presumptively reasonable guidelines range, the more compelling the justification based on the § 3553(a) factors must be." *United States v. McMannus*, 436 F.3d 871, 874 (8th Cir. 2006).

The district court identified five possible reasons to support its decision to vary downward to a sentence of 60 months' imprisonment: (1) the presence of the same factors that made Morales-Uribe eligible for the § 3553(f) safety-valve, including that this was his first offense, the offense did not involve violence and he was not the leader of the conspiracy; (2) the amount of drugs used to calculate his base offense level was substantially the result of law-enforcement-controlled purchases; (3) he faced deportation upon his release from prison; (4) he had lived an underprivileged life; and (5) his motivation for his crime was to gain money to provide treatment for his son's cancer. The 48-month, or 44 percent, downward variance from the bottom of the advisory guidelines range is a substantial variance and thus requires compelling justification. *See United States v. Gatewood*, 438 F.3d 894, 896 (8th Cir. 2006) (stating that a 27-month, or 43 percent, variance below the bottom of the advisory guidelines range is a substantial variance). We find that while the district court considered appropriate factors in imposing the sentence, the district court committed a clear error of judgment in weighing these factors.

First, the district court justified its downward variance by considering the same facts that it considered in finding Morales-Uribe eligible for the § 3553(f) safety-valve. We have stated that "substantial variances based upon factors already taken

-4-

into account in a defendant's guidelines sentencing range seriously undermine sentencing uniformity." *McDonald*, 461 F.3d at 954. Additionally, we have specifically held that facts taken into account in applying the § 3553(f) safety-valve cannot serve as compelling justification for a substantial variance. *United States v. Claiborne*, 439 F.3d 479, 481 (8th Cir. 2006), *cert. granted*, --- U.S. ---, 127 S. Ct. 551 (2006). The district court considered Morales-Uribe's lack of criminal history, the lack of violence associated with his crime and his non-leadership role in the conspiracy in its application of § 3553(f), relieving him of the 120-month statutory mandatory minimum sentence. *See id.* at 481 ("Claiborne's lack of criminal history was taken into account when the safety valve eliminated an otherwise applicable mandatory minimum sentence."). Without § 3553(f), Morales-Uribe's advisory guidelines range would have effectively been adjusted from 108 to 135 months to 120 to 135 months to reflect the mandatory minimum. U.S.S.G. § 5G1.1.

In addition to being relieved from the mandatory minimum, Morales-Uribe's safety-valve eligibility provided him the additional benefit of reducing his advisory sentencing guidelines range. The same factors that allowed him to avoid the mandatory minimum sentence under § 3553(f) were also taken into account in determining Morales-Uribe's total offense level of 31, with an advisory guidelines range of 108 to 135 months. Because Morales-Uribe qualified for safety-valve relief, he received a two-level reduction from his base offense level. *See* 18 U.S.C. § 3553(f); U.S.S.G. §§ 2D1.1(b)(9), 5C1.2. Without this reduction, Morales-Uribe's total offense level would have been 33, with a resulting advisory guidelines range of 135 to 168 months. Thus, Morales-Uribe's lack of criminal history, the fact that no violence accompanied his offense and the fact that he was not the leader of the conspiracy already had reduced significantly his advisory guidelines range. These identified factors therefore cannot support a substantial downward variance.[1]

---

[1]Additionally, because Morales-Uribe was assigned a criminal history category of I, it is inappropriate to use his lack of criminal history to provide compelling justification for his substantial variance. *United States v. Myers*, 439 F.3d 415, 418

Second, the district court clearly erred when it found that law enforcement officials made six controlled purchases from Morales-Uribe. Although the district court correctly stated that "some of the drug quantities attributed to the Defendant were the result of government-controlled drug deals," it is undisputed by the parties that only three controlled purchases were made by law enforcement officials.[2] Further, to the extent that the district court implied that the law enforcement purchases increased Morales-Uribe's advisory guidelines range, the second and third controlled purchases of methamphetamine had no effect on Morales-Uribe's advisory guidelines range. Because Morales-Uribe dealt in both mixtures containing methamphetamine and actual methamphetamine, all drug quantities sold by Morales-Uribe were converted to their marijuana equivalents before determining the advisory guidelines sentencing range. U.S.S.G. § 2D1.1, cmt. n.10. The earlier independent purchases made from Morales-Uribe by the informant and the first controlled purchase made by law enforcement agents using the informant resulted in 3,554 kilograms of marijuana equivalent. This quantity alone easily placed Morales-Uribe at a base offense level of 34, which is applicable for 3,000 to 10,000 kilograms of marijuana. U.S.S.G. § 2D1.1(c)(3). Thus, the two additional controlled purchases of methamphetamine by law enforcement officials, which amounted to 519.2 kilograms of marijuana equivalent and increased the total to 4,073.2 kilograms of marijuana equivalent, had no effect on the determination of Morales-Uribe's base offense level. Because the district court clearly erred in determining the number of controlled purchases and because the additional controlled purchases did not affect Morales-Uribe's advisory

(8th Cir. 2006) ("Inasmuch as a guidelines sentence reflects a defendant's criminal history, a wide divergence from the guidelines sentence based solely on this single criterion would conflict with the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.").

[2]Although the informant made several purchases from Morales-Uribe between August 2004 and January 2005, there is no evidence that these purchases were made in conjunction with law enforcement activities.

guidelines range, it was clear error for the district court to justify the downward variance by reasoning that controlled purchases contributed to an increase in Morales-Uribe's advisory sentencing guidelines range.

Third, the district court specifically considered that following Morales-Uribe's imprisonment, the Government would deport him to Mexico. In imposing a sentence, a district court must consider the need for the sentence "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). Arguably, the need to protect the public from a defendant may be reduced in a case where, upon immediate release from incarceration, the Government will deport the defendant. *See, e.g.*, *United States v. Zapata-Trevino*, 378 F. Supp. 2d 1321, 1328 (D.N.M. 2005), *United States v. Ramirez-Ramirez*, 365 F. Supp. 2d 728, 733 (E.D. Va. 2005). Assuming that Morales-Uribe's impending deportation could provide some justification for a downward variance in appropriate circumstances, it certainly would not support a substantial downward variance in this case. The PSR, to which Morales-Uribe did not object, indicates that he has attempted to enter the United States illegally on three separate occasions. Two of these attempts, one being successful, occurred even after the Government deported him on October 27, 1999. This indicates strongly that deportation will not protect the people of the United States from further crimes by Morales-Uribe. Under these facts, the impending deportation of Morales-Uribe would support little, if any, variance.

Finally, the district court mentioned both Morales-Uribe's underprivileged background, which included growing up in a poor family that worked in the fields of Zacatecas, Mexico, and Morales-Uribe's motivation for his crime, noting that Morales-Uribe "dealt in drugs because of [his] son's condition . . . ." While these are appropriate considerations in assigning a sentence, *see* 18 U.S.C. § 3553(a) ("The court, in determining the particular sentence to be imposed, shall consider (1) the nature and circumstances of the offense and the history and characteristics of the

defendant."), they cannot by themselves justify a variance of this substantial magnitude.

## III.    CONCLUSION

For the foregoing reasons, we vacate Morales-Uribe's sentence as unreasonable and remand for resentencing consistent with this opinion.

_____