# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3230

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Tamara Lynn Heid, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 13, 2011
Filed: August 11, 2011

_____

Before LOKEN, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A federal grand jury returned a superseding indictment charging six defendants with conspiracy to launder money, a violation of 18 U.S.C. § 1956(h). The proceedings relating to three of the defendants, including Tamara Heid, were severed from the remaining defendants, who also had been charged with conspiracy to possess with intent to distribute and to distribute methamphetamine. Heid pled guilty to the charge of conspiracy to launder money but later moved to withdraw her plea, arguing that no factual basis supported her guilty plea. The district court denied her motion to withdraw and sentenced her to 18 months' imprisonment. Heid appeals.

## I.    BACKGROUND

On January 13, 2009, Donavan Slagg, Heid's son and a methamphetamine dealer, was arrested and charged with drug violations under North Dakota law. After the state district court judge set his bail at $50,000 cash, Slagg contacted Heid to request her help in getting him out of jail. At Heid's plea hearing, the district court found that "she did so using some proceeds that Mr. Slagg had . . . in her home and then called in debts or debts were called in by [Slagg] through a series of phone calls." Heid ultimately assembled the necessary funds. Although a bail bondsman was not necessary to post the bail, she retained two bondsmen to deliver the money to the Burleigh County Courthouse and paid them $1,000. In its order denying her motion to withdraw her plea, the district court found that Heid told the bondsmen that "the funds were the life savings of [her] and her mother." However, according to the unobjected-to facts in Heid's presentence investigation report, Robert Zacher, a cohort of Slagg's, admitted that he gave Heid approximately $9,000 for Slagg's bail and that at least some of this money derived from drug proceeds.

The bondsmen initially attempted to post the bail alone, but after they discovered that the cash Heid provided them was $2,000 short they contacted Heid, who soon joined them at the courthouse. After they located the errant funds, the court clerk informed Heid and the bondsmen that one of them would have to sign the requisite IRS currency transaction form. Both Heid and the bondsmen manifested reluctance, stemming, the district court found, from "the mistaken belief that the signature would somehow automatically expose them to income tax liability." One of the bondsmen eventually signed the document, however, at which point Heid collected her son.

On September 24, 2009, a federal grand jury returned a superseding indictment charging seven persons, including Slagg, with conspiracy to possess with intent to distribute and to distribute methamphetamine, a violation of 21 U.S.C. §§ 841(a)(1)

and 846. The indictment also charged Heid, Slagg, the two bondsmen, and two persons who contributed to the bail money with conspiracy to launder money, arising out of their efforts to post Slagg's bail. The proceedings relating to Heid and the two bondsmen—the three defendants charged only with the money laundering conspiracy—were severed from the remaining defendants, all of whom also were charged with the drug conspiracy.

On April 2, 2010, Heid entered a guilty plea, without a plea agreement, to the single count of conspiracy to launder money. At the plea hearing, the district court found that the money used to post Slagg's bail derived, in part, from money that Slagg kept at his mother's house and from contributions made by people who owed Slagg money. In addition, when asked by the district court whether she knew that some of the money was "dirty," Heid responded that she "d[id not] want to know" the origin of the bail money and admitted that she knew her son was a drug dealer and that she "k[ept] records of his stuff when he sells things." Heid also confirmed that her "bottom line" reason for posting the bail was to "get [her] son out of jail." The district court then made the following statement:

> [T]he Court will accept the plea of guilty to the money laundering charge with a caveat, and that caveat is, I'm going to wait until I'm totally familiar with the complete record in this matter before making a determination that the intent of the entire process was to disguise, conceal, etcetera . . . . So for the record today, I'm accepting the plea and it's going to be subject to the possibility of authorizing counsel to challenge at a later date the factual basis; namely, the intent, after the completion of the trial involving the remaining two defendants.[1]

---

[1] Heid does not challenge the propriety of the district court's deferring determining the factual basis until after the plea hearing (indeed, she affirms that the district court may "defer its inquiry until sentencing").

At this point, the prosecutor interjected, "On the issue of the factual basis, Judge, I think the Court can establish the intent issue with some questions of Ms. Heid." The prosecutor then stated that a number of "guarded" recorded telephone conversations between Heid and Slagg "are really pretty good evidence . . . of intent to conceal." Moreover, the prosecutor reiterated that Heid "kn[ew] full well that a bondsman wasn't needed" but retained the bondsmen to "make it look like this was a legitimate transaction where a bondsman brings in money and posts it for an individual." The district court did not renew its colloquy with Heid but simply stated, "Well, for the record -- and at this point I have accepted a guilty plea to Count 2 of the Indictment, and I'm not -- as I've indicated, I'm not certain that that acceptance is going to stick, but for right now it definitely is."

The two bondsmen subsequently proceeded to trial. A jury returned verdicts of guilty as to both defendants, but the district court entered judgments of acquittal, concluding that the evidence was insufficient to support a reasonable finding either that the bondsmen "knew that the money was dirty" or that they "agreed to take or took any action for any purpose other than helping Ms. Heid get her son out of jail." *United States v. Marchus*, No. 09-cr-69, 2010 WL 1440984, at *4 (D.N.D. Apr. 9, 2010). Even "[i]f Slagg and his mother had additional motives," the court maintained, "there is no evidence the [bondsmen] were aware of them." *Id.*

On April 30, 2010, Heid moved to withdraw her guilty plea, arguing that "what [she] acknowledged at her change of plea hearing d[id] not constitute a crime" and noting that the district court had "permitted Heid[] . . . the ability to challenge whether . . . the transaction of posting bond was designed to or involved the actual intent to conceal illicit proceeds." The district court denied Heid's motion, apparently determining that Heid had not shown a fair and just reason for withdrawing her plea based on what the court characterized as the Government's position that "it is not necessary to show an intent to launder money, only to show an intent to post the cash

-4-

as a bail bond." *United States v. Heid*, No. 09-cr-69-06, 2010 WL 2403048, at *2 (D.N.D. June 9, 2010). Following entry of judgment, Heid appealed.

## II. DISCUSSION

Heid renews her contention that an inadequate factual basis existed for her guilty plea and, thus, that a fair and just reason exists for withdrawing the plea. "After a guilty plea is accepted but before sentencing, a defendant may withdraw the plea if he establishes 'a fair and just reason for requesting the withdrawal.'" *United States v. Goodson*, 569 F.3d 379, 382 (8th Cir. 2009) (quoting Fed. R. Crim. P. 11(d)(2)(B)). "While the standard is liberal, the defendant has no automatic right to withdraw a plea." *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006). "Even if such a fair and just reason exists, before granting the motion a court must consider 'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *Id.* (quoting *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993)). However, "[i]f the defendant fails to establish a fair and just reason for withdrawing the guilty plea, the trial court need not address the remaining considerations." *Nichols*, 986 F.2d at 1201. We review the district court's decision not to allow the withdrawal of a guilty plea for an abuse of discretion. *United States v. Maxwell*, 498 F.3d 799, 801 (8th Cir. 2007); *United States v. Wicker*, 80 F.3d 263, 266 (8th Cir. 1996).

Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." The purpose of this rule is "to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (quoting Fed. R. Crim. P. 11 Advisory Comm. Notes (1966)). Rule 11 "does not specify that any particular type

of inquiry be made . . . . An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case." Fed. R. Crim. P. 11 Advisory Comm. Notes (1974); *see also United States v. Brown*, 331 F.3d 591, 595 (8th Cir. 2003). In addition, we observe that the district court's order denying Heid's motion to withdraw her plea articulated a number of facts adduced at the bondsmen's trial. *See United States v. Wetterlin*, 583 F.2d 346, 353 (7th Cir. 1978) ("[I]f the district judge finds it necessary to look to evidence other than the defendants' statements to establish the factual basis for the plea in any situation, these additional facts or evidence must be specifically articulated on the record.").[2]

Conspiring to launder money in violation of 18 U.S.C. § 1956(h) requires that the defendant "agreed with another person to violate the substantive provisions of the money-laundering statute." *United States v. Hynes*, 467 F.3d 951, 964 (6th Cir. 2006); *see also United States v. Pizano*, 421 F.3d 707, 725 (8th Cir. 2005). "At base, there must exist an agreement to achieve an illegal purpose." *Pizano*, 421 F.3d at 725-

---

[2] We decline Heid's invitation to explore the entire record of the bondsmen's trial, as such an approach flatly contravenes the requirement that "the sentencing judge must develop, on the record, the factual basis for the plea." *Santobello v. New York*, 404 U.S. 257, 261 (1971); *see also United States v. Keiswetter*, 860 F.2d 992, 996 (10th Cir. 1988) ("[T]he trial judge's exercise of his discretion can only be judged by reference to the record."); *Sassoon v. United States*, 561 F.2d 1154, 1159 (5th Cir. 1977) ("[T]he factual basis, whatever its source, must appear clearly on the record."); Fed. R. Crim. P. 11(g) ("If there is a guilty plea or a nolo contendere plea, the record must include the inquiries . . . required under Rule 11(b)."). "General references by the district judge to the fact that he heard evidence at another trial which related to this charge and this defendant, but without specifying precisely what evidence he had in mind, is not sufficient for this court to consider that entire trial as being part of *this record*." *Wetterlin*, 583 F.2d at 352 (emphasis added). Rather, as noted above, our consideration of facts adduced at the bondsmen's trial is limited to those facts—all unchallenged by Heid—specifically articulated in the district court's order rejecting her challenge to the factual basis for her plea.

26 (quoting *United States v. Evans*, 272 F.3d 1069, 1082 (8th Cir. 2001)). The charged object of the conspiracy in the present case was a violation of the transaction provision of the money laundering statute, 18 U.S.C. § 1956(a)(1)(B)(i), and the financial transaction identified in the indictment was "[t]he posting of $50,000 cash at the Burleigh County Courthouse . . . for the bond of Donavan Michael Slagg." There are four elements to this offense:

> (1) defendant conducted, or attempted to conduct a financial transaction which in any way or degree affected interstate commerce or foreign commerce; (2) the financial transaction involved proceeds of illegal activity; (3) defendant knew the property represented proceeds of some form of unlawful activity; and (4) defendant conducted or attempted to conduct the financial transaction knowing the transaction was "designed in whole or in part [] to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity."

*United States v. Phythian*, 529 F.3d 807, 813 (8th Cir. 2008) (quoting § 1956(a)(1)(B)(i)). Thus, § 1956(a)(1)(B)(i) requires the existence of two mental states: (1) the defendant's knowledge that the money represented the proceeds of some form of unlawful activity, and (2) the defendant's knowledge that the transaction was "designed . . . to conceal or disguise" a specified attribute of the money. Interpreting the analogous transportation provision of the money laundering statute, which prohibits the transportation of certain criminal proceeds into or out of the United States "knowing that such transportation . . . is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control" of the funds, 18 U.S.C. § 1956(a)(2)(B)(i), the Supreme Court held in *Cuellar v. United States* that the statute's "design" element "requires proof that the purpose—not merely effect—of the transportation was to conceal or disguise a listed attribute" of the funds. 553 U.S. 550, 567 (2008); *see also United States v. Williams*, 605 F.3d 556, 564-65 (8th Cir. 2010) (finding *Cuellar*'s holding applicable to the transaction

-7-

provision of the money laundering statute).[3]  Thus, the Government must show that concealment is an "intended aim" of the transaction, *Cuellar*, 553 U.S. at 563, whether from direct evidence or circumstantial evidence, *United States v. Cruzado-Laureano*, 404 F.3d 470, 483 (1st Cir. 2005); *see also United States v. Blackman*, 904 F.2d 1250, 1257 (8th Cir. 1990).

We agree with Heid that an adequate factual basis does not appear in the record. Even assuming Heid knew that a purpose of the transaction was the concealment or disguise of the money's listed attributes, the record contains no basis to reasonably determine that she conspired with any other person to further that illegal purpose.  The superseding indictment alleged that Heid conspired with Slagg, the two bondsmen, and two men who contributed to Slagg's bail, Gregory Taylor and Robert Zacher, to violate § 1956(a)(1)(B)(i).  We consider the record as it pertains to each of these alleged co-conspirators in turn.

The only mention in the record of Slagg's involvement in the bail-posting transaction is the district court's finding at the plea hearing that Slagg requested Heid to gather $50,000 to post his bail and the Government's characterization of these conversations as "guarded."  Although this characterization of the conversations may well support a reasonable determination that Heid and Slagg agreed to post Slagg's bail with tainted drug money, it provides no basis for a determination that Slagg knew that the transaction was "designed in whole or in part . . . to conceal or disguise" the listed attributes of the money.[4]  The record likewise contains no facts upon which a

---

[3] Of course, concealment need not be the sole purpose of the transaction; the statute requires only that the transaction be designed "in whole *or in part*" to conceal. § 1956(a)(1)(B) (emphasis added); *see also Cuellar*, 553 U.S. at 566 n.7.

[4] We note that in our companion opinion, *United States v. Slagg*, No. 10-3269—which upholds the evidentiary sufficiency of Slagg's conviction for conspiring to launder money—we hold that the recorded telephone conversations are sufficient to allow a reasonable jury to infer that Slagg knew that the bail-posting transaction

court reasonably could determine that the two bondsmen agreed with Heid to commit money laundering, as there is no basis for determining that the bondsmen knew that the money "represent[ed] the proceeds of some form of unlawful activity." § 1956(a)(1). Indeed, in its order denying Heid's motion to withdraw her guilty plea, the district court found that Heid falsely told the bondsmen that the $50,000 comprised her and her mother's life savings. Because there is no indication that the bondsmen knew that the money was tainted, a court cannot reasonably determine that they entered an agreement with Heid to launder the money. Finally, the record contains skeletal evidence concerning the final alleged co-conspirators, Taylor and Zacher. The presentence investigation report notes simply that the two "were among those attempting to raise money for Mr. Slagg's bail." This conduct alone does not permit an inference that they knew that a purpose of the bail-posting transaction was to conceal or disguise the money's attributes, as we repeatedly have held that "the money laundering statute may not be so broadly construed that it becomes a 'money spending statute.'" *United States v. Shoff*, 151 F.3d 889, 892 (8th Cir. 1998) (quoting *United States v. Herron*, 97 F.3d 234, 237 (8th Cir. 1996)); *see also United States v. Rockelman*, 49 F.3d 418, 422 (8th Cir. 1995).

Absent proof of an agreement between two or more persons "to violate the substantive provisions of the money-laundering statute," *Hynes*, 467 F.3d at 964, there is no factual basis for Heid's plea to the charge of conspiracy to launder money. Accordingly, we hold that Heid has shown a "fair and just reason" for withdrawing her plea, particularly as the district court deferred a final determination of factual basis until after the conclusion of her co-defendants' trial and essentially invited Heid to

was designed, in part, to conceal or disguise listed attributes of the funds. Unfortunately, the conversations are not part of the present record, *see supra* note 2, and therefore our consideration is limited to the Government's exiguous account of them. We also observe, however, that the Government has no cause to complain in light of its representation at oral argument that our review of the district court's factual basis determination is confined to the transcript of the plea hearing.

challenge the factual basis for her plea in a motion to withdraw, and the Government does not meaningfully argue that Heid's plea should stand in the absence of a factual basis in the record.

## III.   CONCLUSION

For the foregoing reasons, we vacate Heid's guilty plea and remand the case to the district court for further proceedings not inconsistent with this opinion.

_____