# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1795

_____

United States of America

*Plaintiff - Appellee*

v.

Michael A. Maggio

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 8, 2017
Filed: July 3, 2017

_____

Before RILEY,[1] Chief Judge, GRUENDER, Circuit Judge, and GRITZNER,[2] District Judge.

_____

RILEY, Chief Judge.

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

In this case, we affirm the bribery conviction and ten-year prison sentence the district court[3] ordered for a former state-court judge who admitted trading a remittitur in a case for a campaign contribution and then had second thoughts about his guilty plea.

## I.    BACKGROUND

In late spring 2013, Michael Maggio was a circuit (trial) judge in Arkansas, starting to campaign for a seat on the Arkansas Court of Appeals. Through a lobbyist, Maggio solicited "'nursing home folks'"—stockholders, not residents—for financial support. Meanwhile, Maggio was presiding over a case in which the jury had just returned a $5.2 million verdict against a nursing-home company. On the day Maggio heard argument on the company's motion to remit the judgment, the owner of the company wrote checks totaling $24,000 to support Maggio's campaign. Maggio, who had been told by the lobbyist that the company's owner would give money if Maggio ruled in his company's favor, accepted the contributions and, in exchange, reduced the award to $1 million.

Based on these admitted facts, Maggio pled guilty to violating 18 U.S.C. § 666, which says:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

(A) [illegally takes $5,000 or more worth of official property]; or

---

[3] The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

(B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or

(2) [gives, offers, or agrees to give a bribe];

shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

In other words (and as relevant), an agent of a federally funded state government or agency cannot accept anything of value "intending to be influenced or rewarded in connection with" official business. Id.

To satisfy the statute's technical requirements, Maggio stipulated that (1) "[d]uring his tenure as a circuit judge, [he] was an agent of the State of Arkansas and the Twentieth Judicial District"; and (2) "the State of Arkansas, Twentieth Judicial District, received over $10,000 in federal funding" in the relevant years. Maggio also "waive[d] the right to appeal the conviction and sentence,"[4] while

---

[4]Because Maggio explicitly waived the right to appeal, we need not address what effect his guilty plea standing alone might have had on his ability to appeal. Cf. Class v. United States, 137 S. Ct. 1065 (2017) (mem.) (granting certiorari in a case presenting the question: "Whether a guilty plea inherently waives a defendant's right to challenge the constitutionality of his statute of conviction?").

"reserv[ing] the right to appeal the sentence if the sentence imposed is above the Guideline range that is established at sentencing." See United States v. Andis, 333 F.3d 886, 889 (8th Cir. 2003) (en banc) ("As a general rule, a defendant is allowed to waive appellate rights.").

While waiting to be sentenced, Maggio stopped cooperating with the government. The government then revoked its favorable stipulations regarding sentencing, and Maggio's Presentence Investigation Report was revised accordingly. Shortly thereafter, Maggio moved to withdraw his guilty plea. See Fed. R. Crim. P. 11(d)(2)(B). The district court denied Maggio's motion.

At sentencing, the district court calculated the recommended sentencing range under the advisory United States Sentencing Guidelines (Guidelines or U.S.S.G.) to be 51 to 63 months. Maggio argued for probation. The government, after unsuccessfully contesting the Guidelines determination,[5] asked for a sentence at the high end of the range. The district court varied upward to 120 months, the statutory maximum, see 18 U.S.C. § 666(a), emphasizing that "a dirty judge is by far more harmful to society than any dope dealer."[6]

---

[5]The government cited Guidelines § 2C1.1(b)(2) and the accompanying commentary to argue it was a mistake to base Maggio's offense level on the value of the campaign contributions he received, rather than the much larger amount by which he reduced the judgment. We do not address this issue—which the government has preserved as a fallback argument on appeal—because we conclude the sentence was reasonable on its own terms.

[6]Harsh words and lengthy sentence notwithstanding, the district court allowed Maggio sixty days to get his affairs in order, and then granted Maggio's motion for release pending this appeal. The district court also had allowed Maggio to remain free for the fourteen months between his guilty plea and sentencing. As the government makes a point of informing us, Maggio has not yet served any time for his misdeeds. That will soon change. Until then, we decline the implicit invitation to revoke Maggio's bond or otherwise impose a harsher disposition than the district

Maggio now argues his conviction is illegal and his sentence unreasonable. We have appellate jurisdiction under 28 U.S.C. § 1291.

## II.    DISCUSSION

We review legal issues, including the application of Maggio's appeal waiver and the interpretation of § 666, de novo. See, e.g., United States v. Seay, 620 F.3d 919, 923 (8th Cir. 2010). The district court's refusal to let Maggio withdraw his plea is reviewed for abuse of discretion. See, e.g., United States v. Heid, 651 F.3d 850, 854 (8th Cir. 2011). So are the decision to vary upward and the reasonableness of the sentence. See, e.g., United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

### A.    Conviction

Maggio's primary contention on appeal is that there was no factual basis for his guilty plea, and the district court should have let him withdraw it. See Heid, 651 F.3d at 856. One of the facts Maggio claims was missing is what he calls a "nexus" between the bribe he took and the federal funding received by the judicial district where he sat. Nothing in the text of § 666 requires such a link between the bribe and federal money, yet Maggio insists we must read one in, otherwise the statute would exceed Congress's power under the Constitution. The government picks out this portion of Maggio's argument, which it characterizes as an "attempt[] to raise an 'as applied' challenge to § 666 by squeezing it through the door of his challenge to the factual basis of his plea," and asserts it is barred by Maggio's appeal waiver.

Maggio's response is not to dispute the applicability of the waiver but to claim it is irrelevant, because his theory implicates the district court's subject-matter

_____

court ordered, given that the government could have appealed the point but did not. See 18 U.S.C. §§ 3145(c), 3731; cf. Greenlaw v. United States, 554 U.S. 237, 240 (2008) ("[A]bsent a Government appeal or cross-appeal, the sentence . . . should not have been increased.").

jurisdiction and "lack of federal jurisdiction cannot be waived," Mitchell v. Maurer, 293 U.S. 237, 244 (1934). Our case law is clear, "[a]s-applied challenges to the constitutionality of a statute . . . are not jurisdictional." Seay, 620 F.3d at 922 n.3. We find no support for Maggio's suggestion his particular as-applied challenge is somehow outside that rule "because it deals, not with a mere defense, but with proof of federal nexus and the 'necessary and proper' clause and the ability to prosecute at all." The controlling precedent, United States v. Seay, also involved a defendant who argued a federal criminal law could not be applied to him constitutionally, and we held his challenge was "foreclosed by his guilty plea."[7] Id.

At oral argument, we asked why the government did not invoke the appeal waiver against the rest of Maggio's argument, namely his claims about the deficient factual basis for his plea. The government assured us that it did. There is nothing to that effect in the government's brief, however—the discussion of waiver is clearly confined to the as-applied constitutional challenge. Given that it is the government's burden to prove an appeal waiver applicable and enforceable, see, e.g., United States v. Gray, 528 F.3d 1099, 1102 (8th Cir. 2008), we hesitate to dismiss Maggio's other arguments on the basis of his appeal waiver absent any real argument that the requirements for doing so are satisfied. That is particularly so in light of the wording of Maggio's waiver being at least slightly less clear with respect to factual-basis challenges than others we have seen. Cf., e.g., id. at 1100 (waiver expressly covered "'any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea'" (emphasis omitted)).

---

[7]Maggio's cursory reference to the rule that we will not enforce appeal waivers if doing so would work a miscarriage of justice, see Andis, 333 F.3d at 891, is no help either. Maggio simply declares the exception should apply "[i]f the court finds merit in any of [his] arguments," but that cannot be right—enforcing waivers to bar only meritless appeals would render the rule superfluous.

Leaving aside the waiver, Maggio's arguments that there was no factual basis for finding him guilty are all easily resolved. The (again, nonjurisdictional) nexus theory is squarely foreclosed by United States v. Hines, in which we held "the plain language of [§ 666] does not require, as an element to be proved beyond a reasonable doubt, a nexus between the activity that constitutes a violation and federal funds."[8] United States v. Hines, 541 F.3d 833, 835-36 (8th Cir. 2008) (affirming the conviction of a deputy sheriff who took cash payoffs for enforcing eviction orders and seizing property, and who argued his conduct had nothing to do with the federal funding the sheriff's office received); see also Sabri v. United States, 541 U.S. 600, 605 (2004). The claim that Maggio was not an agent of the state government is belied by his stipulation that he "was an agent of the State of Arkansas and the Twentieth Judicial District." See United States v. Brown, 331 F.3d 591, 595 (8th Cir. 2003) (making clear that the factual basis for a guilty plea can be established through facts recounted and stipulated in the plea agreement). Maggio's claim that there was no basis for finding any quid pro quo ignores his express admission of "accept[ing] . . . financial support . . . *intending to be influenced and induced* to remit the judgment" (emphasis added). See id.

---

[8]Contrary to Maggio's suggestion, the Supreme Court's recent decision in McDonnell v. United States, 579 U.S. ___, 136 S. Ct. 2355 (2016), did not undermine Hines, such that we could choose not to follow it here, see, e.g., United States v. Williams, 537 F.3d 969, 975 (8th Cir. 2008). McDonnell was about what conduct rises to the level of an "official act" within the scope of a different bribery statute. See McDonnell, 579 U.S. at ___, 136 S. Ct. at 2371-72 (interpreting 18 U.S.C. § 201(a)(3)). McDonnell had nothing to do with § 666 or what sort of federal connection is necessary to give Congress authority over state-level corruption. True, the Court expressed concerns that if the statutory language were read too broadly, "public officials could be subject to prosecution, without fair notice, for the most prosaic interactions," id. at ___, 136 S. Ct. at 2372-73, and Maggio likewise warns that upholding his conviction would result in "overcriminalization and free ranging prosecution" under § 666. But the logical parallel between those issues is far too abstract to establish that our specific holding in Hines is in doubt after McDonnell.

Also mistaken is Maggio's reliance on <u>United States v. Whitfield</u>, a Fifth Circuit decision vacating § 666 convictions for two Mississippi judges on the grounds that the bribes they took were not "'in connection with any business, transaction, or series of transactions' of [an] agency receiving federal funds." <u>United States v. Whitfield</u>, 590 F.3d 325, 335-36, 345-46 (5th Cir. 2009) (quoting 18 U.S.C. § 666(a)(1)(B)). The theory of <u>Whitfield</u> was, the only such agency that might have been implicated was the Mississippi Administrative Office of the Courts. <u>See</u> <u>id.</u> at 344. Because the business of that office—"'the efficient administration of the nonjudicial business of the courts'"—"had nothing to do with" the judges' corrupt acts—rulings in cases they presided over—§ 666 did not apply. <u>Id.</u> at 344-46 (quoting Miss. Code Ann. § 9-21-1). Here, by contrast, the relevant federally funded agency was "the State of Arkansas, Twentieth Judicial District, Second Division," the judicial body on which Maggio sat. <u>See</u> 18 U.S.C. § 666(d)(2) (defining "government agency" to include "a subdivision of the . . . judicial . . . branch of government"). We have no doubt that when a judge issues an order remitting a judgment in a case before him, he is acting in connection with the business of his court.

Finally, Maggio's undeveloped suggestion that he did nothing wrong because "the remittitur was legally required" reflects a fundamental misunderstanding of his crime. Simply put, Maggio admitted he took money intending it to color his judgment in a case. That was illegal, whether or not a judge who was not corrupt might have ruled the same way. <u>See</u> <u>id.</u> § 666(a)(1)(B) (prohibiting "corruptly . . . accept[ing]" something of value "intending to be influenced or rewarded in connection with" official business).

### B.    Sentence

Maggio argues his sentence is unreasonable because the district court based the upward variance on the fact Maggio was a judge, even though the Guidelines already accounted for Maggio's position by increasing his offense level by four levels for being "an elected public official" or "public official in a high-level decision-making

or sensitive position," U.S.S.G. § 2C1.1(b)(3).[9] Maggio cites decisions in which we have "cautioned district courts that 'substantial variances based upon factors already taken into account in a defendant's guidelines sentencing range seriously undermine sentencing uniformity.'" United States v. Solis-Bermudez, 501 F.3d 882, 885 (8th Cir. 2007) (quoting United States v. Morales-Uribe, 470 F.3d 1282, 1286 (8th Cir. 2006)). The government counters with case law making clear that "factors that have already been taken into account in calculating the advisory Guidelines range can nevertheless form the basis of a variance," so long as the sentence ultimately imposed is reasonable. United States v. David, 682 F.3d 1074, 1077 (8th Cir. 2012).

This is not the case to address any tension in our precedent on this point, because Maggio's premise that the variance reflected double-counting (improper or not) is mistaken. The thrust of the district court's explanation of the variance was not just that Maggio was a significant public official who took a bribe in connection with some undefined official business, which is all the Guidelines provision accounted for, but specifically that he was *a judge* who took a bribe *to decide a case a particular way*. Thus:

> I put drug dealers in prison for five, ten, 15, 20 years for standing on the street corner selling crack cocaine or being involved in a conspiracy where they are talking on the phone about crack.
>
> And I asked myself this morning on my way over here from Helena driving over, What is worse: A dope dealer on the phone talking about a dope deal, or a dirty judge? There's no question. In society, a dirty judge is by far more harmful to society than any dope dealer. Now,

---

[9]In his reply brief, Maggio supplements this theory with references to the purposes of sentencing and comparisons to other bribery cases involving lawyers and government officials. We generally do not consider arguments omitted from a party's initial brief, see, e.g., United States v. Morris, 723 F.3d 934, 942 (8th Cir. 2013), and in any event, the additions are mainly rhetorical and do not change our conclusion.

you say dope dealers kill people and they do all of that, but a judge is the system.

In the district court's view, the fact Maggio acted corruptly while performing his core duty as a judge presiding over a case—a context in which, even more than other high-level and elected officials, he assumed a mantle of impartiality and sat as a personification of "the system"—set his crime apart and made it significantly worse than the usual one to which the Guidelines provision applied. We see no abuse of discretion in that determination, particularly given the deference we afford the district court regarding sentencing. See, e.g., Feemster, 572 F.3d at 464.

## III.  CONCLUSION

Maggio waived at least part of his appeal, his nexus theory is meritless, and the district court was within its discretion to hold him to his guilty plea and sentence him to ten years in prison. We affirm.

_____