# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-3460

———————————————

United States of America

*Plaintiff - Appellee*

v.

Christopher Gregory-Richard Hardy

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of North Dakota - Western

——————————

Submitted: October 23, 2025
Filed: April 1, 2026

——————————

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Christopher Hardy pleaded guilty to conspiracy to distribute fentanyl and heroin, *see* 21 U.S.C. § 846. At sentencing, the district court[1] determined that Hardy

———————————

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

qualified for a guidelines enhancement for knowingly misrepresenting or knowingly marketing fentanyl pills as another substance. We affirm.

## I. Background

During a traffic stop, law enforcement found Hardy in possession of over one thousand small blue fentanyl-containing pills marked "M30." He was charged with conspiracy to distribute and possess with intent to distribute fentanyl and heroin.[2] *See* 21 U.S.C. §§ 841(a)(1), b(1)(B)-(C), 846. Hardy pleaded guilty.

Prior to sentencing, the U.S. Probation Office prepared a presentence investigation report ("PSR"), which recommended that the district court apply a sentencing enhancement under U.S.S.G. § 2D1.1(b)(13)(A) in determining Hardy's advisory sentencing guidelines range. Section 2D1.1(b)(13)(A) provides for an increased offense level "[i]f the defendant . . . knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl." The PSR recommended this enhancement because Hardy "acknowledged he was aware the counterfeit oxycodone pills"—that is, the blue pills with "M30" marks—"contain[ed] fentanyl." This enhancement increased his total offense level from 23 to 27 and resulted in an advisory sentencing guidelines range of 100 to 125 months' imprisonment. Hardy objected, and the Government did not defend the enhancement at sentencing. Nonetheless, the district court applied the enhancement and sentenced Hardy to 100 months' imprisonment. Hardy appeals, arguing that the district court erred in applying the enhancement.[3]

---

[2]The pills in Hardy's possession did not contain heroin, but he admitted that he had on other occasions transported heroin as part of the conspiracy.

[3]The Government asserts that Hardy waived this appeal in his plea agreement, while Hardy argues the waiver is not applicable. Because we affirm on the merits, we need not consider the issue. *See United States v. Maggio*, 862 F.3d 642, 646 (8th Cir. 2017) (reaching merits without resolving appeal waiver because merits were "all easily resolved").

## II. Analysis

We review sentences to ensure they are free of a "significant procedural error" such as a miscalculation of the guidelines. *United States v. Sullivan*, 853 F.3d 475, 478 (8th Cir. 2017); *Gall v. United States*, 552 U.S. 38, 51 (2007). We review the district court's "construction and application" of the guidelines *de novo*. *United States v. Campbell*, 986 F.3d 782, 797 (8th Cir. 2021). We review the district court's factual findings for clear error. *United States v. Stanley*, 362 F.3d 509, 511 (8th Cir. 2004).

Hardy argues that there is no evidence he misrepresented the pills or marketed them as a substance other than fentanyl. Hardy argues that unless he 1) showed the pills to someone else or 2) told someone that the pills were something other than fentanyl, he could not have misrepresented them or marketed them as another substance. As Hardy admits in his guilty plea, he placed the fentanyl in the drug market by acquiring pills from suppliers in Minnesota, transporting them to North Dakota, and selling them through a network of sub-distributors. *See Market*, Merriam-Webster's Collegiate Dictionary, 760 (11th ed. 2019) (defining the verb "market" as "to expose for sale in a market"). While he had not yet sold the blue pills marked "M30" he possessed when law enforcement apprehended him, he admitted these pills were part of the same scheme of distribution. Hardy further disputes whether blue coloration and "M30" markings on pills indicate a substance other than fentanyl to the average purchaser of illegal drugs. Specifically, he argues that blue pills with an "M30" marking are synonymous with fentanyl in the illegal drug market, meaning any purchaser of his pills would be "fully aware that the substance being bought and sold is fentanyl."

Consistent with our precedent, we hold that Hardy's placement of blue "M30" pills in the market constituted marketing of those pills. After briefing began but before argument, we decided *United States v. Salinas*, 132 F.4th 1083 (8th Cir.

2025).[4]  In *Salinas*, we considered an appeal by a defendant who was apprehended during a traffic stop with a large quantity of fentanyl pills which were marked "M30." *Id.* at 1085-86.  Like Hardy, the defendant in that case had acquired fentanyl pills for sale and law enforcement apprehended him transporting those pills to another market for sale. *See id.*  The defendant argued that he had not misrepresented or marketed the pills as a substance other than fentanyl pills and should not be subject to a sentencing enhancement.  *Id.* at 1090.  We rejected his argument, relying on extensive testimony in the record that the markings on the pills made the fentanyl "look like the most popular generic oxycodone 30 milligrams sold in the United States" and were designed to "le[ad] customers to believe that the drugs were safe because . . . they're taking medicine and not a[n illegal] drug." *Id.* at 1091 (citation modified).  Because record evidence in *Salinas* showed that the markings on the pills would cause a person to think the pills were another substance than fentanyl and Salinas intended to distribute those pills to purchasers, we concluded that he had misrepresented or marketed the pills as another substance and upheld the enhancement. *Id.*

Therefore, if the blue coloration and "M30" markings on the pills in this case indicated a substance other than fentanyl, Hardy's placement of the pills in the market in that form require application of the enhancement.  Whether the blue coloration and "M30" markings indicate a substance other than fentanyl is a factual question, so we review for clear error.  *See Stanley*, 362 F.3d at 511; *Salinas* 832 F.3d at 1091.  Hardy conceded sufficient facts for the district court to determine that, as in *Salinas*, the coloration and markings identify the pills as a substance other than fentanyl.  In his sentencing memorandum, Hardy conceded that substances other than fentanyl—specifically, oxycodone and clorazepate dipotassium—frequently have blue coloration and "M30" markings.  Hardy did not provide any evidence that

---

[4]*Salinas* concerned a different provision of U.S.S.G. § 2D1.1b(13) that only required that a defendant be willfully blind to or consciously avoid knowledge of the fact the substance at issue was not a legitimately manufactured drug.  *Id.* at 1090.  However, the subsection still required that the defendant misrepresent or market the fentanyl as another substance.  *Id.*

fentanyl is ever sold in the legitimate market in the form of blue pills marked "M30." Hardy also did not provide any evidence for his assertion that blue pills marked "M30" are closely and exclusively associated with fentanyl by illegal drug purchasers. Therefore, the district court did not clearly err by concluding that the pills' blue color and "M30" markings indicated a substance other than fentanyl, and the district court properly applied the guidelines provision. *See Stanley*, 362 F.3d at 511-12 (affirming a district court's reasonable conclusions from facts stipulated by defendant at sentencing).

Because Hardy conceded that the pills' coloration and markings indicate a substance other than fentanyl, that he knew they were in fact fentanyl, and that he placed these pills in the market, we affirm the district court's application of the enhancement.[5]

### III.  Conclusion

For the foregoing reasons, we affirm Hardy's sentence.

_____

_____

[5]At oral argument, Hardy's counsel argued that even if the markings indicate a substance other than fentanyl, there was no evidence before the district court that Hardy knew that. Accordingly, he did not *knowingly* misrepresent or market fentanyl pills as another substance because he thought he was representing or marketing the pills as fentanyl. *See* U.S.S.G. § 2D1.1(b)(13)(A). This argument never appears with specificity in Hardy's briefs. *See United States v. Sigillito*, 759 F.3d 913, 936 (8th Cir. 2014) (requiring specificity for presentation of an issue). "We do not consider arguments made for the first time at oral argument." *United States v. Larison*, 432 F.3d 921, 923 n.3 (8th Cir. 2006). Therefore, we do not reach whether § 2D1.1(b)(13)(A) requires that Hardy knew that the blue coloration and "M30" markings indicated a substance other than fentanyl. Nor do we reach whether there is any evidence in the record that he did.